UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

274 ATLANTIC ISLES, LLC,

       Debtor.

_____/

Case No. 22-14810-LMI

Chapter 11

ERIC R. SCHWARTZ, AS TRUSTEE
UTA dated 3/4/2019,

       Plaintiff,

v.

ISAAC HALWANI; GISELLE HALWANI;
274 ATLANTIC ISLES, LLC, a Delaware
limited liability company; JOHN DOE; and
JANE DOE, unknown parties in possession, if any,

       Defendants.

_____/

Adv. No. 22-01199-LMI

274 ATLANTIC ISLES, LLC, a Delaware
limited liability company,

       Counter-Plaintiff,

v.

ERIC R. SCHWARTZ, AS TRUSTEE
UTA dated 3/4/2019,

       Counter-Defendant.

_____/

274 ATLANTIC ISLES, LLC, a Delaware
limited liability company,

       Third-Party Plaintiff,

v.

BRIAN M. GAINES and LBM ENTERPRISES, LLC,
a Florida limited liability company.

       Third-Party Defendants.

_____/

## DEFENDANTS ISAAC HALWANI, GISELLE HALWANI, AND 274 ATLANTIC ISLES, LLC'S THIRD AMENDED COUNTERCLAIM AND THIRD-PARTY COMPLAINT

Defendants, 274 ATLANTIC ISLES, LLC ("Atlantic"), Isaac Halwani, and Giselle Halwani (collectively, Isaac Halwani and Giselle Halwani are sometimes referred to as the "Halwanis"), through counsel, file this Third Amended Counterclaim and Third-Party Complaint against BRIAN M. GAINES, AS SUCCESSOR TRUSTEE UTA DATED 3/4/2019 ("Trustee" and such trust, the "Trust") and BRIAN M. GAINES ("Gaines" and, together with Trustee, the "Counter-Defendants") and LBM Enterprises, LLC ("LBM") and, as grounds therefore, states as follows:

### JURISDICTION AND VENUE

1. This is an action seeking declaratory judgments, quiet title, rescission, and damages relating to actions of Trustee, as lender, and Gaines, individually as lender's principal, each concerning certain real property in Miami-Dade County, Florida, more fully described as follows:

> LOTS 101 AND 102, ATLANTIC ISLAND, ACCORDING TO THE PLAT THEREOF RECORDED IN PLAT BOOK 34, PAGE 17, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA, TOGETHER WITH A PROPRIETARY INTEREST IN THE SOUTH 40 FEET OF THE NORTH 59.67 FEET OF LOT 96, OF TATUM 'S OCEAN BEACH PARK, ACCORDING TO THE PLAT THEREOF, RECORDED IN PLAT BOOK 5, PAGE 35, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA, LYING EAST OF THE EAST RIGHT-OF-WAY LINE OF THE 100 FOOT RIGHT-OF-WAY OF STATE ROAD NO. AlA, RECORDED IN PLAT BOOK 46, PAGE 40 OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA.
>
> Folio Number: 31-2214-003-0760
>
> a/k/a: 274 Atlantic Avenue, Sunny Isles Beach, Florida 33160

(hereinafter, the "Property").

2.      At all material times mentioned hereto, Atlantic is and was a Delaware limited liability company and the rightful owner of the Property. On June 22, 2022, Atlantic filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code.

3.      At all material times mentioned hereto, Isaac Halwani is and was a resident of Miami Dade County, Florida and is otherwise *sui juris.* On June 22, 2022, Isaac Halwani filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code.

4.      At all material times mentioned hereto, Giselle Halwani is and was a resident of Miami Dade County, Florida and is otherwise *sui juris.* On June 22, 2022, Giselle Halwani filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code.

5.      The initial trustee of the Trust was Eric R. Schwartz ("Schwartz"), who resigned as trustee of the Trust effective March 15, 2022. On March 15, 2022, Brian M. Gaines was appointed successor trustee of the Trust. Upon information and belief, Brian M. Gaines remains the successor trustee of the Trust through the present time. As used herein, the term "Trustee" shall interchangeably refer to Schwartz or Gaines, as the timing and context dictates.  The Trustee engaged in business in Miami-Dade County, Florida, and is subject to the jurisdiction of this Court.

6.      At all material times mentioned hereto, Third-Party Defendant, Gaines, is and was a resident of the State of Florida and is otherwise *sui juris.*  Gaines, directly or indirectly, holds the beneficial interest in the Trust.

7.      LBM is and was, at all times relevant hereto, a limited liability company organized under the laws of the State of Florida and is subject to the jurisdiction of this Court.

8.      This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 157(a) and 1334(b).

9.      This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (H).

10.     Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

11.     All conditions precedent to bringing this action have either occurred, been performed, excused, or otherwise waived.

12.     Atlantic has retained the services of the undersigned counsel to prosecute this action and has agreed to reimburse costs and to pay reasonable fees for counsel's services herein.

## GENERAL ALLEGATIONS

13.     On January 22, 2016, Atlantic purchased the Property as evidenced by the Warranty Deed (the "Warranty Deed") recorded on January 25, 2016, in Official Records Book 29935 at Page 1668, of the Public Records of Miami-Dade County, Florida. A true and correct copy of the Warranty Deed is attached hereto as **Exhibit A**.

14.     On March 7, 2019, non-party TCB & GSD Consulting LLC, a Florida limited liability company ("TCB & GSD"), executed and delivered a Promissory Note (the "Note") to Trustee in the principal amount of One-Million-Five-Hundred-Thousand-Dollars-and-Zero-Cents ($1,500,000.00). A true and correct copy of the Note is attached hereto as **Exhibit B**.

15.     The Note was guaranteed by Atlantic, Isaac Halwani and Giselle Halwani (collectively, the "Guarantors") pursuant to an instrument entitled Continuing Guaranty (collectively, the "Guaranty") dated March 7, 2019. A true and correct copy of the Guaranty signed by Guarantors is attached hereto as **Composite Exhibit C**.

16.     On March 7, 2019, Atlantic executed and delivered to Trustee, a Mortgage and Security Agreement (the "Mortgage"), securing payment of the Note, which mortgaged the Property. A true and correct copy of the Mortgage is attached hereto as **Exhibit D**.

17.     The Mortgage was recorded on March 12, 2019, in Official Records Book 31360 at Page 4924, of the Public Records of Miami-Dade County, Florida.

18.    On September 29, 2020, TCB & GSD executed and delivered to Trustee an instrument entitled Modified and Consolidated Promissory Note (the "Modified Note") in the amount of Two-Million-One-Dollar-and-Zero-Cents ($2,000,001.00). A true and correct copy of the Modified Note is attached hereto as **Exhibit E**. The Modified Note provided for an initial interest rate of twenty-four (24%) percent per annum.

19.    The Modified Note was guaranteed by the Guarantors pursuant to the terms of an instrument entitled Second Amended Continuing Guaranty (the "Amended Guaranty"). A true and correct copy of the Amended Guaranty is attached hereto as **Exhibit F**.

20.    On September 28, 2020, as security for payment of the Modified Note, Atlantic executed and delivered to Trustee an instrument entitled Future Advance Receipt and Modification of Promissory Note and Mortgage and Security Agreement (the "Mortgage Modification"), which became effective as of September 29, 2020. A true and correct copy of the Mortgage Modification is attached hereto as **Exhibit G**.

21.    The Mortgage Modification was recorded on October 6, 2020, in Official Records Book 32128 at Page 4624, of the Public Records of Miami-Dade County, Florida.

22.    The Note, Mortgage, Guaranty, Modified Note, Amended Guaranty, and Mortgage Modification are collectively referred to as the "Loan Documents."

23.    On December 18, 2020, TCB & GSD, Atlantic, Guarantors, Trustee, and Schwartz, as escrow agent on behalf of his law firm, Weitz & Schwartz, P.A., entered into a Forbearance Agreement (the "Forbearance Agreement") prepared by Schwartz whereby in exchange for Trustee agreeing to forbear from the filing of a foreclosure action, TCB & GSD and Guarantors were given until March 7, 2021 to cure a then alleged default under the Loan Documents and until

March 29, 2021 to make a principal payment of $500,001.00. A true and correct copy of the Forbearance Agreement is attached hereto as **Exhibit H**.

24.    Neither Trustee nor Gaines is a licensed mortgage lender, broker, or originator.

25.    Trustee and Gaines, by virtue of their dealings with Atlantic and the Halwanis relative to the Loan Documents and Forbearance Agreement, have acted as an unlicensed lender, loan originator and/or mortgage broker.

26.    In connection with the Forbearance Agreement, Trustee and Gaines required Atlantic to execute an instrument entitled Deed in Lieu of Foreclosure (the "DIL") which purported to convey the Property to Trustee; however, the DIL was not delivered to Trustee.  Instead, the DIL was to be held in trust by Trustee's counsel, Schwartz, for the purpose or with the intention of securing the payment of money.

27.    Pursuant to the Forbearance Agreement, in the event Atlantic and the Halwanis brought the monetary obligations under the Loan Documents current, then Schwartz, as escrow agent holding the DIL, would void the DIL and return the original of same to Atlantic.

28.    At the time the Forbearance Agreement was signed, Trustee alleged a payment default under the Loan Documents of less than sixty (60) days.

29.    Atlantic was not represented by counsel at the time the Forbearance Agreement and the DIL were executed.

30.    Instead, Atlantic was informed that it had no choice but to sign said documents, or else, according to what Gaines told the Halwanis, Atlantic would lose the Property, and the Halwanis and their minor children would be physically removed from the Property.

31.    Prior to Trustee making the loan, Gaines went to the Property and knew the Halwanis and their minor children resided there.

32.     Neither Trustee, Gaines nor Schwartz informed Atlantic or the Halwanis that a DIL, unlike a foreclosure referenced in the Loan Documents, would strip Atlantic of its statutory right of redemption and the ability to recover excess sale proceeds over and above the amount due under the Loan Documents in the event of a judicially ordered public sale of the Property.

33.     Trustee and Gaines intentionally misrepresented the need for Atlantic to execute the DIL, and the twenty-four (24%) percent interest rate under the Modified Note was apparently an insufficient profit margin for Gaines whose conduct shows that he made a "loan to own" with the goal of taking ownership of the Property, avoiding a foreclosure action as a legitimate lender would have pursued, and capturing the substantial equity in the Property far in excess of the amounts due under the Loan Documents.

34.     On March 29, 2021, Gaines directed Schwartz to record the DIL, thereby stripping Atlantic from its statutory right of redemption for the Property. A true and correct copy of the DIL is attached hereto as **Exhibit I**.

35.     The DIL was recorded on April 5, 2021, in Official Records Book 32430 at Page 4114 of the Public Records of Miami-Dade County, Florida.

36.     After the DIL was recorded, Atlantic and Gaines, who at all times had full decision making authority on behalf of the Trust, entered into an oral agreement (the "Oral Agreement") whereby Atlantic and the Halwanis were to: (a) remit or cause to be remitted the sum of $100,000.00 to or for the benefit of Trustee and/or Gaines, and (b) transfer or cause to be transferred title of a 2017 Porsche Panamera Turbo (VIN No. WPOAF2A74HL152903) (the "Vehicle") to or for the benefit of Trustee and/or Gaines, in exchange for Trustee retracting the DIL, conveying title back to Atlantic, and recording documents necessary to effect such retraction and conveyance.

37.    On or about April 30, 2021, in reliance on the Oral Agreement, Atlantic, through Isaac Halwani, but at the direction of Gaines, caused a wire in the sum of $100,000.00 (the "Transfer") to be sent to LBM, an entity owned and/or managed by Gaines. The funds were sent from a bank account held by Frozen Wheels, LLC, an affiliate entity managed by Isaac Halwani. A true and correct copy of the proof of wire transfer is attached hereto as **Exhibit J**.

38.    On or about May 4, 2021, Atlantic, through Isaac Halwani, but at the direction of Gaines, tendered an endorsed certificate of title of the Vehicle to Gaines, the transferee of which was left in blank. A true and correct copy of the vehicle information check from the Florida Department of Highway and Motor Vehicles is attached hereto as **Exhibit K**.[1] The Vehicle had an original purchase price in excess of $155,000.00.

39.    Upon information and belief, Gaines inserted his name as the grantee in the certificate of title to the Vehicle, and Gaines currently owns and drives the Vehicle.

40.    Astonishingly, Gaines has taken the position that the Vehicle was given to him by Isaac Halwani as a "gift" and as a showing of "appreciation" notwithstanding the fact that the Vehicle was tendered to Gaines nearly one month *after* the DIL had been recorded.

41.    To date, Trustee has not retracted the DIL or reconveyed the title of the Property back to Atlantic.

42.    On November 11, 2021, pursuant to Fla. Stat. § 701.04, Atlantic requested an estoppel/payoff as to the Mortgage, as modified (the "Payoff Request"). A copy of said statutory Payoff Request is attached hereto as **Exhibit L**.

---

[1] Although the vehicle information check from the Florida Department of Highway and Motor Vehicles does not state the current owner of the Vehicle, it does show that title of the Vehicle was transferred on May 4, 2021, after the recording of the DIL.

43.     On November 28, 2021, Schwartz, as counsel for Trustee, provided an estoppel letter (the "Estoppel") in response to the Payoff Request which asserts that there is no outstanding indebtedness related to the Mortgage. A true and correct copy of the Estoppel is attached hereto as **Exhibit M**.

44.     At the time, Atlantic had procured alternative financing and was ready, willing, and able to satisfy the Mortgage.

45.     Trustee and Gaines, having caused or directed the DIL to be recorded and now claiming title to the Property which had a fair market value far in excess of the balance due under the Mortgage, refused to accept payment of the amounts due under the Mortgage in exchange for a satisfaction of the Mortgage and reconveyance of title to Atlantic.

46.     In addition to claiming ownership by the Trustee of the Property under the DIL, Trustee and Gaines have taken the position that Atlantic owes the full amount (i.e.-$525,000.00 in principal plus default interest and legal fees) under a second mortgage loan given by Gaines through another trust, which mortgage is recorded in Official Records Book 31661, Page 2766, of the Public Records of Miami-Dade County, Florida.

## COUNT I
### DECLARATORY ACTION AS TO DIL UNDER FLA. STAT. § 697.01
### AGAINST BRIAN M. GAINES, AS SUCCESSOR TRUSTEE
### UTA DATED MARCH 4, 2019

47.     Atlantic re-alleges the allegations contained in paragraphs 1 through 46 above, as though fully set forth herein.

48.     Atlantic seeks declaratory judgment pursuant to Florida Statutes, Chapter 86, determining that the DIL is considered a mortgage pursuant to Fla. Stat. § 697.01.

49.     There is a bona fide, actual, and practical need for a declaratory judgment because Trustee purports to have taken title to the Property via the DIL.

50.     This request for declaratory judgment is made pursuant to a set of ascertainable facts and a present controversy.

51.     Atlantic has an actual present interest in determining this matter in order to determine ownership of the Property.

52.     All conditions precedent to this action have occurred or have been waived.

WHEREFORE, 274 ATLANTIC ISLES, LLC, demands declaratory judgment against Counter-Defendant, BRIAN M. GAINES, AS SUCCESSOR TRUSTEE UTA DATED MARCH 4, 2019, determining that the DIL is deemed a mortgage under Florida law, and awarding Atlantic's reasonable attorneys' fees and costs, plus such other and further relief as the Court deems just and proper.

### COUNT II
### QUIET TITLE
### AGAINST BRIAN M. GAINES, AS SUCCESSOR TRUSTEE
### UTA DATED MARCH 4, 2019

53.     Atlantic re-alleges the allegations contained in paragraphs 1 through 46, above, as though fully set forth herein.

54.     Atlantic obtained title to the Property by virtue of the Warranty Deed which is attached hereto as **Exhibit A** and owns the Property.

55.     The DIL is deemed a mortgage under applicable law and is, therefore, insufficient to transfer title to the Property.

56.     The DIL is Counter-Defendant's sole claim to title to the Property.

57.     Any claim of title under the DIL is invalid.

58.     Atlantic remains the true owner of the Property regardless of the recordation of the DIL.

WHEREFORE, ATLANTIC ISLES, LLC, respectfully requests this Court enter final judgment against Counter-Defendant, BRIAN M. GAINES, AS SUCCESSOR TRUSTEE UTA DATED MARCH 4, 2019: (i) declaring the DIL to be invalid and a clog on Atlantic's equity of redemption; (ii) quieting title to the Property in favor of Atlantic and against Counter-Defendant, Trustee, and all persons or entities claiming by, through or under Counter-Defendant, Trustee; (iii) granting Atlantic its costs incurred in bringing this action to be paid by Counter-Defendant, Trustee; and (iv) awarding such other and further relief as this Court deems just and proper.

## COUNT V
### DECLARATORY ACTION AS TO ESTOPPEL UNDER FLA. STAT. § 701.04
### AGAINST BRIAN M. GAINES, AS SUCCESSOR TRUSTEE
### UTA DATED MARCH 4, 2019

82.    Atlantic re-alleges the allegations contained in paragraphs 1 through 46, above, as though fully set forth herein.

83.    Atlantic seeks declaratory judgment pursuant to Florida Statutes, Chapter 86, determining that the Estoppel is insufficient pursuant to Fla. Stat. § 701.04.

84.    There is a bona fide, actual, and practical need for a declaratory judgment because Trustee refuses to provide a payoff as required by said statute.

85.    This request for declaratory judgment is made pursuant to a set of ascertainable facts and a present controversy.

86.    Atlantic has an actual present interest in determining this matter in order to determine ownership of the Property.

87.    All conditions precedent to this action have occurred or have been waived.

88.     Atlantic has suffered damages as a result of Trustee's failure and/or refusal to provide a valid estoppel, including but not limited to principal and interest which are due thereunder.

WHEREFORE, 274 ATLANTIC ISLES, LLC, demands declaratory judgment against Counter-Defendant, BRIAN M. GAINES, AS SUCCESSOR TRUSTEE UTA DATED MARCH 4, 2019, determining that the Estoppel is insufficient under Florida law, preventing the accrual of any interest since the date of the Estoppel, and awarding Atlantic its damages, including reasonable attorneys' fees and costs, plus any other and further relief as the Court deems just and proper.

**COUNT VI**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFER**
**UNDER 11 U.S.C. §§ 548(a)(1)(B) and 550(a) AGAINST BRIAN M. GAINES,**
**AS SUCCESSOR TRUSTEE UTA DATED MARCH 4, 2019**
**(THE PROPERTY)**

89.     Atlantic re-alleges the allegations contained in paragraphs 1 through 46, above, as though fully set forth herein.

90.     Within two years of the Petition Date, Atlantic executed the DIL to Trustee and received less than reasonably equivalent value in exchange therefore. At the time the DIL was executed, Atlantic:

    a.  was insolvent, or became insolvent as a result;

    b.  was engaged or was about to be engaged in a business or transaction for which its remaining property was unreasonably small capital; or

    c.  intended to incur, or believed that it would incur, debts beyond its ability to pay such as debts matured.

91.     Atlantic is entitled to avoid the DIL and recover the Property from Trustee, as initial transferee under 11 U.S.C. §§ 548(a)(1)(B) and 550(a)(1).

92.    Alternatively, Atlantic is entitled to avoid the DIL and recover the Property from Trustee, as immediate or mediate transferee under 11 U.S.C. §§ 548(a)(1)(B) and 550(a)(2).

WHEREFORE, 274 ATLANTIC ISLES, LLC, demands judgment against Counter-Defendant, BRIAN M. GAINES, AS SUCCESSOR TRUSTEE UTA DATED MARCH 4, 2019, (i) avoiding the DIL; (ii) preserving and recovering the Property for the benefit of the bankruptcy estate; (iii) entering judgment against Counter-Defendant, Trustee, in an amount equal to the value of the Property; and (iv) awarding such other and further relief as the Court deems just and proper.

DATED: January 3, 2023.

**VENABLE LLP**
*Proposed Attorneys for Defendants*
100 Southeast Second Street, Suite 4400
Miami, Florida 33131
Telephone: (305) 349-2300

By:   */s/ Eric D. Jacobs*
    Glenn D. Moses, Esq.
    Florida Bar No. 174556
    gmoses@venable.com
    Eric D. Jacobs, Esq.
    Florida Bar No. 85992
    edjacobs@venable.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on January 3, 2023, a true copy of the foregoing document has been furnished via electronic mail by virtue of the Court's CM/ECF System to all parties receiving electronic notice.

By:   */s/ Eric D. Jacobs*
    Eric D. Jacobs, Esq

CFN: 20160044103 BOOK 29935 PAGE 1668
DATE:01/25/2016 08:56:10 AM
DEED DOC 9,300.00
HARVEY RUVIN, CLERK OF COURT, MIA-DADE CTY

This instrument prepared by
& return to:
**Grant W. Kehres, P.A.**
**2000 Glades Rd. Suite 302**
**Boca Raton, FL 33431**
**WILL CALL BOX 73**
File No.: 7693-03
Parcel ID# 31-2214-003-0760
Grantee's S.S.#  -  -

## WARRANTY DEED
### (Statutory Form - Section 689.02, F.S.)

THIS INDENTURE is made this **22nd day of January, 2016**, between 274 Atlantic, LLC, a Florida limited liability company, grantor*, and 274 Atlantic Isles LLC, a Delaware limited liability company whose post office address is c/o Aurelio Vargas , 9100 S. Dadeland Blvd., #912, Miami, FL 33156, grantee*.

WITNESSETH, that said grantor, for and in consideration of the sum of Ten and NO/100 ($10.00) Dollars and other good and valuable considerations to said grantor in hand paid by said grantee, the receipt whereof is hereby acknowledged, has granted, bargained and sold to the said grantee, and grantee's heirs and assigns forever, the following described land, situate, lying and being in Miami-Dade County, Florida, to-wit:

> Lots 101 and 102, ATLANTIC ISLAND, according to the Plat thereof recorded in Plat Book 34, Page 17 of the Public Records of Miami-Dade County, Florida, TOGETHER WITH a Proprietary Interest in the South 40 feet of the North 59.67 feet of Lot 96 of TATUM'S OCEAN BEACH PARK, according to the Plat thereof recorded in Plat Book 5, Page 35 of the Public Records of Miami-Dade County, Florida, lying East of the East right-of-way line of the 100 foot right-of-way of State Road No. A1A recorded in Plat Book 46, Page 40 of the Public Records of Miami-Dade County, Florida.

TOGETHER, with all the tenements, hereditaments and appurtenances thereto belonging in or anywise appertaining.

SUBJECT TO: zoning, restrictions, prohibitions and other requirements imposed by governmental authority; restrictions and matters appearing on the plat or otherwise common to the subdivision; public utility easements of record; and real estate taxes and assessments for the year 2016 and all subsequent years.

TO HAVE AND TO HOLD, the same in fee simple forever.

And the said grantor does hereby fully warrant the title to the said land, and will defend the same against the lawful claims of all persons whomsoever.

* "Grantor" and "grantee" are used for singular or plural as context requires.

**DoubleTime®**

EXHIBIT A

CFN: 20160044103 BOOK 29935 PAGE 1669

Warranty Deed
Parcel ID# 31-2214-003-0760
Page 2

IN WITNESS WHEREOF, the grantor has hereunto set grantor's hand and seal the day and year first above written.

Signed, sealed and delivered
in the presence of:

_____
(Signature of Witness #1)

David  Hassan
(Printed Name of Witness #1)

_____
(Signature of Witness #2)

Diana  Sanchez.
(Printed Name of Witness #2)

_____
(Signature of Witness #1)

William G. Cortes
(Printed Name of Witness #1)

_____
(Signature of Witness #2)

_____
(Printed Name of Witness #2)

274 ATLANTIC, LLC, a Florida
limited liability company

By: _____
Alberto Hemsani Chayo, Member
18851 NE 29th Ave., #104A, Aventura, FL 33180
(Printed Address of Grantor)

And By: _____
Carlos Zaga, Member
18851 NE 29th Ave., #104A, Aventura, FL 33180
(Printed Address of Grantor)

State of Florida
County of Miami-Dade

The foregoing instrument was acknowledged before me this ___21___ day of January, 2016 by Alberto Hemsani Chayo and Carlos Zaga of 274 Atlantic, LLC, on behalf of said firm.  They [ ] are personally known or [X] have produced a driver's license as identification.

[Notary Seal]

NADIESKY AMARO
Commission # FF 221416
My Commission Expires
April 16, 2019

_____
Notary Public

Printed Name: _____

My Commission Expires: _____

*Warranty Deed - Page 2*

**DoubleTime®**

## PROMISSORY NOTE

$1,500,000.00                                    FORT LAUDERDALE, FLORIDA
                                                March 7, 2019

    FOR VALUE RECEIVED, the undersigned, TCB & GSD CONSULTING LLC, a Florida limited liability company, whose post office addresses is 16565 N.W. 15th Ave., Miami, FL 33169, hereinafter the "maker," promises to pay to the order of Eric R. Schwartz, as Trustee UTA dated March 4, 2019, whose post office address is 2412 Barcelona Drive, Fort Lauderdale, FL 33301, hereinafter the "Lender" the principal sum of One Million Five Hundred Thousand and No/100 Dollars ($1,500,000.00) together with interest thereon from the date of this Note at the initial rate of twelve percent (12.00%) per annum, both principal and interest being payable in Lawful Money of the United States, such principal sum and interest payable as follows:

> Consecutive monthly installments interest only, computed on the basis of a 360 day year for the actual number of days elapsed, commencing on April 7, 2019 and on the 7th day of each and every consecutive month thereafter; On April 7, 2020, the remaining unpaid principal amount and accrued interest shall be due and payable in full.

    **THIS NOTE MAY NOT BE PREPAID IN PART. ANY PREPAYMENT IN FULL OF THE PRINCIPAL BALANCE OUTSTANDING ON THIS NOTE SHALL INCLUDE A PREPAYMENT CHARGE EQUAL TO TWELVE MONTH'S INTEREST ON THE PREPAID AMOUNT LESS INTEREST PREVIOUSLY PAID ON THE PREPAID AMOUNT PRIOR TO THE DATE OF SUCH PREPAYMENT. THERE IS NO PREPAYMENT CHARGE AFTER THE LENDER HAS RECEIVED PAYMENT OF TWELVE MONTH'S INTEREST ON THE OUTSTANDING PRINCIPAL BALANCE.**

    In the event that any payment is returned on account of insufficient or uncollected funds, maker shall additionally be liable for a return check charge of $100.00 and the Lender may require that all future payments be made by cashier's check, money order or Federal Reserve wire transfer. Maker hereby understands and acknowledges that all charges and fees referred to in this paragraph arise out of and are intended to off-set predictable administrative costs and expenses which Lender shall suffer in the event of such delinquencies or returned checks; and such charges and fees shall not be deemed or construed to represent interest or penalties. Lender shall have no responsibility or liability for payments purportedly made hereunder but not actually received by Lender; and Borrower shall not be discharged from the obligation to make such payments due to loss of same in the mails or due to any other excuse or justification ultimately involving facts where such payments were not actually received by Lender.

    The term "Loan Documents" as used herein shall mean any and all of the documents heretofore, now, or hereafter executed by maker, by others or by maker and others which wholly or partly secure or were, are, or will be executed in connection with the indebtedness evidenced

Page 1 of 4 – Promissory Note


Initials

EXHIBIT B

by this Promissory Note, including, but not limited to, the Mortgage and Security Agreement, Loan Agreement, Assignment of Rents, Leases, and Profits, UCC-1 Financing Statements, and associated Affidavits, disclosures and miscellaneous loan documentation (the "loan documents").

The maker and endorsers of this note further agree to waive demand, notice of non-payment and protest, and in the event suit shall be brought for the collection hereof, or the same has to be collected upon demand of an attorney, to pay reasonable attorney's fees for making such collection. This Promissory Note shall be in default in the event all payments, including installment payments and payment of principal are not made in clear funds by 2:00 P.M. on the date upon which they are due. The principal sum upon default or acceleration, shall bear interest at the maximum rate of interest permitted by law from its due date, maturity, default, or post-judgment until paid.    In the event of default, the post-judgment rate of interest will be equal to the default interest set forth herein and not the statutory post-judgment rate of interest.    The prepayment charge as set forth in this Note shall apply in the event that a default under the terms and conditions of this    Note results in the    acceleration of the    principal sum due hereunder, and the payee shall be entitled to recover the prepayment charge in addition to default interest as provided herein.  This note is secured by a mortgage of even date herewith and is to be construed and enforced according to the laws of the State of Florida. Upon default in the payment of principal and/or interest when due, the whole sum of principal and interest remaining unpaid shall, at the option of the holders, become immediately due and payable.  Failure to exercise this option shall not constitute a waiver of the right to exercise the same in the event of a subsequent default.

The Maker, and any endorsers, sureties, guarantors and all others who are, or who may become liable for the payment hereof, severally, irrevocably, and unconditionally (a) Agree that any suit, action, or other legal proceeding arising out of or relating to this Promissory Note may be brought, at the option of the Lender, in a court of record of the State of Florida in Miami-Dade County, or in any other court of competent jurisdiction; (b) Consent to the jurisdiction of each such Court in any such suit, action or proceeding; and (c) Waive any objection which it or they may have to the laying of venue of any such suit, action or proceeding in any such Courts.

Upon the happening of any of the following events, each of which shall constitute a "default" hereunder, all sums due hereunder shall thereupon or thereafter, at Lender's option, become immediately due and payable; (a) Failure of obligor (which term shall mean and include each maker, endorser, surety, guarantor or other party liable for payment of or pledging collateral or security under this Note) to pay in full and with clear funds on or before the due date, any sum due hereunder or due by any obligor to Lender under any other Promissory Note or under any security instrument or written obligation of any kind now existing or hereafter created; (b) Occurrence of default under any of the Loan Documents or any other loan agreement or security instrument now or hereafter in effect which by its terms covers this Promissory Note or the indebtedness evidenced thereby which default remains uncured;    (c) filing  of  any petition under the Bankruptcy Code  or  any similar federal or state statute by  or against any obligor or the insolvency of any obligor;  (d) making  of  a general assignment by any obligor for the benefit of creditors, appointment of or taking possession by a receiver, trustee or custodian or


Initials

similar official for any obligor or for any assets of any such obligor or institution by or against any obligor of any kind of insolvency proceedings or any proceeding for dissolution or liquidation of any obligor which is not dismissed within any proceeding for dissolution or liquidation of any obligor which is not dismissed within thirty (30) days of the filing thereof; (d) Entry of a final judgment against any obligor which is not satisfied or transferred to bond within thirty (30) days of the date of entry; (e) material falsity in any certificate, statement, representation, warranty or audit at any time furnished to Lender or on behalf of any obligor pursuant to or in connection with this Promissory Note, the Loan Documents or any loan agreement or security agreements now or hereafter in effect, which by its terms covers this Promissory Note for the indebtedness evidenced hereby or otherwise including any omission to disclose any substantial contingent or liquidated liabilities or any material adverse change in any facts disclosed by any certificate, statement, representation, warranty or audit furnished to Lender; (f) Issuance of any writ or attachment or writ of garnishment or filing of any lien against any collateral or the property of any obligor which is not dismissed within thirty (30) days of the date of issuance or filing, whichever is applicable; (g) Taking of possession of any material collateral or of any substantial part of the property of any obligor at the instance of any governmental authority; (h) Dissolution, merger, consolidation, or reorganization of any obligor; (i) Assignment or sale by any obligor of any equity in any collateral secured by this Promissory Note without the prior written consent of Lender; or (j) Cancellation of any guaranty with respect hereto without the prior written consent of bank hereof; or (k) Occurrence of any default under any of the Loan Documents or obligation of maker or of any obligor to Lender.

Lender shall have all of the rights and remedies of a creditor, mortgagee and secured party under all applicable law. Without limiting the generality of the foregoing, upon the occurrence of any default, as defined hereinabove, Lender may, at its option, and without notice or demand (i) declare the entire unpaid principal and accrued interest accelerated and due and payable at once, together with any and all other liabilities of maker or any of such liabilities selected by Lender; and (ii) setoff against this Promissory Note all monies owed by Lender in any capacity to maker, whether or not due and also setoff against all other liabilities of maker to Lender all monies owed by Lender in any capacity to maker, and Lender shall be deemed to have exercised such right of setoff, and to have made a charge against any such money immediately upon the occurrence of such default, although made or entered on the books subsequent thereto. To the extent that any of the collateral is personal property and Lender elects to proceed with respect to it in accordance with the Uniform Commercial Code then, unless that collateral is perishable or threatens to decline speedily in value, or is of a type customarily sold on a recognized market, Lender will give maker reasonable notice of the time and place of any public or private sale thereof. The requirement of reasonable notice shall be met if such notice is, at the option of Lender, hand delivered, sent via expedited courier, or mailed, postage prepaid to maker, at the address given to Lender by maker, or any other address shown on the records of Lender at least ten (10) days before the time of sale. Upon disposition of any collateral after the occurrence of any default hereunder, maker shall be and shall remain liable for any deficiency; and Lender shall account to maker for any surplus, but Lender shall have the right to apply all or part of such surplus (or to hold the same as reserve) against any and all other liabilities of maker to Lender.


Initials

If the calculation of interest or the imposition of a change in the rate of interest after acceleration upon default or the payment of any fees or other charges which are construed to be interest under applicable law, rule, or regulation in effect from time to time, result in an effective rate of interest higher than that permitted to be paid under applicable law, rule, or regulation in effect from time to time, then such charges shall be reduced by a sum sufficient to result in an effective rate of interest no greater than the maximum effective rate of interest to be paid under applicable law, rule or regulation in effect from time to time.  Upon maturity of this Note, whether by acceleration or in due course, interest shall be recalculated over the actual life of the loan, based upon the amounts outstanding, and if the total amount of interest theretofore paid exceeds the amount permitted to paid under applicable law, rule or regulation in effect from time to time, the excess shall be credited to principal, or if such excess exceeds the principal amount due hereunder, refunded to maker.

AS A MATERIAL FACTOR IN INDUCING LENDER TO MAKE THE LOAN EVIDENCED BY THIS NOTE AND ACCEPT THE MORTGAGE AND SECURITY AGREEMENT AND OTHER LOAN INSTRUMENTS, MAKER AND ITS SUCCESSORS AND ASSIGNS, AGREE THAT ANY LITIGATION ARISING OUT OF OR INSTITUTED BY PAYEE OR ITS SUCCESSORS AND ASSIGNS TO ENFORCE ANY OF THE TERMS OF THIS PROMISSORY NOTE SHALL BE TRIED WITHOUT JURY, AND NO JURY TRIAL SHALL BE SOUGHT OR MAINTAINED BY MAKER, ANY GUARANTOR, OR THEIR RESPECTIVE SUCCESSORS AND ASSIGNS, IN ANY LAWSUIT, PROCEEDING, COUNTERCLAIM, OR ANY OTHER LITIGATION PROCEDURE BASED UPON, OR ARISING OUT OF, THE LOAN EVIDENCED BY THE MORTGAGE NOTE, THE MORTGAGE DEED AND OTHER LOAN DOCUMENTS, ANY COLLATERAL OR THE DEALINGS OR THE RELATIONSHIP AMONG MAKER, LENDER AND GUARANTOR, IF ANY.

TCB & GSD CONSULTING LLC,
a Florida limited liability company

By: _____

ISAAC HALWANI, Manager

Payable At:
2412 Barcelona Drive
Fort Lauderdale, FL 33301
or such other place as designated by Lender

Page 4 of 4 – Promissory Note

## CONTINUING GUARANTY

For value received, the sufficiency of which is hereby acknowledged, and in consideration of any loan or other financial accommodation heretofore or hereafter at any time made or granted to by TCB & GSD CONSULTING LLC, a Florida limited liability company, whose post office address is 16565 N.W. 15th Ave., Miami, FL 33169, herein the "Borrower," by Eric R. Schwartz, as Trustee UTA dated March 4, 2019, whose post office address is 2412 Barcelona Drive, Fort Lauderdale, FL 33301, herein, together with its successors and assigns, called "Lender," the undersigned, 274 ATLANTIC ISLES LLC, a Delaware limited liability company, agrees that:

1.      Undersigned hereby unconditionally guarantees the full and prompt payment when due, whether by acceleration or otherwise, and at all times hereafter, of: (a) a Promissory Note of even date herewith secured by a mortgage on real estate in Miami-Dade County, Florida, in the principal amount of One Million Five Hundred Thousand and No/100 Dollars ($1,500,000.00), plus future advances thereunder, as provided in said mortgage, executed by Borrower payable to the order of Lender; (b) any and all extensions or renewals of said note, and all expenses, including attorneys' fees, incurred in the collection thereof, the enforcement of rights under any security therefore and the enforcement hereof; and (c) any indebtedness resulting from advance made on Borrower's behalf by Lender to protect or preserve the priority and security of its first lien (all the foregoing items, (a), (b) and (c), being hereinafter called the "Liabilities").

2.      Undersigned further unconditionally guarantees the faithful, prompt and complete compliance by Borrower with all terms and conditions of the Promissory Note, the Mortgage and Security Agreement securing payment of the Liabilities and all other agreements, documents and instruments securing payment of the Liabilities or related thereto (such Promissory Note, Mortgage Security Agreement and all other instruments collectively referred to hereinafter as the "Loan Documents") and the payment of all costs, expenses, charges and other expenditures required to be made by Borrower, or which Borrower agrees to make, under the terms and provisions of any Loan Document.

3.      In the event Borrower fails to perform its covenants, agreements and undertakings as provided in any Loan Document or otherwise defaults under any of the Loan Documents, Lender shall first foreclose the Mortgage in the manner provided by applicable law and shall first proceed against the Borrower and exhaust any security held by Borrower and all remedies available to Lender against Borrower prior to proceeding against Guarantor. Lender shall apply all foreclosure proceeds to the debt secured by the Loan Documents prior to seeking recovery against the Guarantor.

4.      The obligations of the undersigned hereunder are independent of the obligations of Borrower, and a separate action or actions for payment, damages or performance may be brought and prosecuted against the undersigned, or any one of them, whether or not an action is brought against Borrower or the security for Borrower's obligations, and whether or not

Page 1 of 5 - Continuing Guaranty



EXHIBIT C

Borrower be joined in any such action or actions, and whether or not notice be given or demand be made upon Borrower.

5.    Undersigned hereby transfers and conveys to Lender any and all balances, credits, deposits, accounts items and monies of the undersigned now or hereafter in the possession or control of, or otherwise with, Lender, or Lender's duly authorized agent or attorney and Lender is hereby given a second lien upon, and a security interest in, all property of the undersigned of every kind and description now or hereafter in the possession or control of Lender for any reason, including all dividends and distributions on or other rights in connection therewith.

6.    Lender may, without demand or notice of any kind, at any time when any amount shall be due and payable hereunder by any of the undersigned, appropriate and apply toward the payment of such amount, and in such order of application as Lender may from time to time elect, any property, balances, credits, deposits, accounts, items or monies of such undersigned in the possession or control of Lender for any purpose.

7.    Lender may, from time to time, after written notice to the undersigned (or any of them) and without affecting, diminishing or releasing the liability of the undersigned (or any of them), (a) retain or obtain a security interest in any property to secure any of the Liabilities or any obligation hereunder, (b) retain or obtain the primary or secondary liability of any party or parties, in addition to the undersigned, with respect to any of the Liabilities, (c) extend or renew for any period (whether or not longer than the original period), alter or exchange any of the Liabilities without increasing Guarantor's liability as described herein.

8.    In the event that Borrower is in default, after any applicable notice and cure period, any amount received by Lender from whatever source and applied by it toward the payment of the Liabilities shall be applied in such order of application as Lender may from time to time elect.

9.    The undersigned hereby expressly waives: (a) notice of the acceptance of this Continuing Guaranty, (b) notice of the existence or creation of any Loan Document or all or any of the Liabilities, (c) presentment, demand, notice of dishonor, protest, and all other notices whatever. Lender shall use due diligence in collection or protection of, or realization upon, any security for any of the Liabilities or in enforcing any remedy available to it under any Loan Document prior to resorting to Guarantor for collection of the deficiency, if any.

10.    INTENTIONALLY DELETED

11.    The creation of existence from time to time of Liabilities in excess of the amount to which the right of recovery under this Continuing Guaranty is limited is hereby authorized, without notice to the undersigned (or any of them), shall in no way affect or impair this Continuing Guaranty.

12.    Lender may, after written notice, sell, assign or transfer all or any of the Liabilities, and in such event each and every immediate and successive assignee, transferee, or



holder of all or any of the Liabilities, shall have the right to enforce this Continuing Guaranty, by suit or otherwise, for the benefit of such assignee, transferee or holder as fully as if such assignee, transferee or holder were herein by name specifically given such tights, powers and benefits. Lender shall have an unimpaired right, prior and superior to that of any such assignee, transferee or holder, to enforce this guaranty for the benefit of Lender, as to so much of the Liabilities as it has not sold, assigned or transferred provided said assignee, transferee or holder provides written notice to Borrower and Guarantor.

13.     No delay or failure on the part of Lender in the exercise of any right or remedy shall operate as a waiver thereof and no single or partial exercise by Lender of any rights or remedy herein shall preclude other or further exercise thereof or the exercise of any other right or remedy whether contained herein or in the Promissory Note, Mortgage and Security Agreement, or any other Loan Document. No action of Lender permitted hereunder shall in any way impair or affect this Continuing Guaranty. Nor right or power of the Borrower or anyone else to assert any claim or defense as to the invalidity or unenforceability of any Loan Document or of the Liabilities shall impair or affect the obligations of the undersigned hereunder. Until all of the Liabilities shall have been paid to Lender in full, the undersigned shall have no right to subrogation, and until such time the undersigned waive any right to enforce any remedy which Lender now has or may hereafter have against Borrower, and waive any benefit of and any right to participate in any security now or hereafter held by Lender.

14.     It is fully understood that until each and every one of the covenants and agreements of this Continuing Guaranty are fully performed, the undersigned's obligations shall not be released, in whole or in part, by any action or thing which might, but for this provision of this instrument , be deemed a legal or equitable discharge of a surety or guarantor, or by reason of any waiver, extension, modification, forbearance or delay or other act or omission of Lender or its failure to proceed promptly or otherwise, or by reason of any action taken or omitted by Lender, whether or not such action or failure to act varies or increases the risk of or affects the rights or remedies of the undersigned, or by reason of any further dealings between Borrower, Lender or any other guarantor, and the undersigned hereby expressly waives and surrenders any defense to its liability hereunder based upon any of the foregoing acts, omissions, things agreements or waivers of any of them; it being the purpose and intent of the parties hereto that the covenants, agreements and all obligations hereunder are absolute, unconditional and irrevocable under any and all circumstances except as provided hereinafter.

15.     Any notice, demand or request by Lender, its successor or assigns, to the undersigned shall be in writing, and shall be deemed to have been duly given or made if either delivered personally to the undersigned or mailed by certified mail addressed to the undersigned at the address for each guarantor specified below:

274 ATLANTIC ISLES LLC
16565 N.W. 15th Avenue
Miami, FL 33169

Page 3 of 5 - Continuing Guaranty

Initials

16.     Lender shall be entitled to assign this Continuing Guaranty and all of its rights, privileges, interests and remedies hereunder to any other person, firm, entity, bank or corporation whatsoever with written notice to or consent by the undersigned, and such assignee shall be entitled to the benefits of this Continuing Guaranty and to exercise all such rights, interests and remedies as fully as Lender.

17.     Provided that no default or Event of Default (as that term is defined in the Mortgage and Security Agreement heretofore mentioned) then exists under any Loan Document, this Continuing Guaranty shall terminate when, and only when, each of the following conditions shall have been met: (a) Lender shall have been paid in full, including interest thereon, for all Liabilities.  When such conditions have been met, Lender shall furnish written cancellation of this Continuing Guaranty.

18.     This Continuing Guaranty shall inure to the benefit of Lender, its successors and assigns, and shall bind the undersigned, together with their heirs, legal representatives, successors and assigns.  If more than one party shall execute this Continuing Guaranty, the term "undersigned" shall mean all parties executing this Continuing Guaranty.

19.     This Continuing Guaranty shall be construed in accordance with the laws of the State of Florida, and such laws shall govern the interpretation, construction and enforcement hereof.  Wherever possible each provision of this Continuing Guaranty shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this Continuing Guaranty shall be prohibited by or invalid under such law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Continuing Guaranty.

20.     THE UNDERSIGNNED HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY AND ALL RIGHT THEY MAY HAVE TO A TRIAL BY JURY IN RESPECT TO ANY LITIGATION (INCLUDING BUT NOT LIMITED TO, ANY CLAIMS, CROSS CLAIMS OR THIRD PARTY CLAIMS ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS CONTINUING GUARANTYORANYOTHERLOAN DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED HEREIN.   THE UNDERSIGNED HEREBY CERTIFIES THAT NO REPRESENTATIVE OR AGENT OF THE LENDER NOR THE LENDER'S COUNSEL HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE LENDER WOULD NOT, IN THE EVENT OF SUCH LITIGATION, SEEK TO ENFORCE THIS WAIVER OF RIGHT TO JURY TRIAL PROVISION. THE UNDERSIGNED ACKNOWLEDGE THAT THE LENDER HAS BEEN INDUCED TO ENTER INTO THIS LOAN FOR WHICH THIS GUARANTY APPLIES, INCLUDING THIS GUARANTY, BY, INTER ALIA, THE PROVISIONS OF THIS PARAGRAPH

[SIGNATURE PAGE TO FOLLOW]


Initials

Signed, sealed and delivered this _7th_ day of March, 2019.

In the presence of:

274 ATLANTIC ISLES LLC,
a Delaware limited liability company

Witness Signs

_Eric R. Schwartz_
Witness Prints Name

By: _____

ISAAC HALWANI, Managing Member

Witness Signs

_CLARENCE BARTLETT_
Witness Prints Name

STATE OF FLORIDA

COUNTY OF BROWARD

The foregoing Continuing Guaranty was acknowledged before me this _1_ day of March, 2019, by ISAAC HALWANI, as Managing Member of 274 ATLANTIC ISLES LLC, a Delaware limited liability company, who is [  ] personally known to me or has [✓] produced _FL Driver's License_ as identification.

My Commission Expires:

_12/14/2021_

Notary Public

YAN YU WU
COMMISSION
Number
GG168350
EXPIRES
December 14, 2021
Bonded thru Aaron Notary
Notary Public, State of Florida

Page 5 of 5 - Continuing Guaranty

_____
Initials

## CONTINUING GUARANTY

For value received, the sufficiency of which is hereby acknowledged, and in consideration of any loan or other financial accommodation heretofore or hereafter at any time made or granted to by TCB & GSD CONSULTING LLC, a Florida limited liability company, whose post office address is 16565 N.W. 15th Ave., Miami, FL 33169, herein the "Borrower," by Eric R. Schwartz, as Trustee UTA dated March 4, 2019, whose post office address is 2412 Barcelona Drive, Fort Lauderdale, FL 33301, herein, together with its successors and assigns, called "Lender," the undersigned, ISAAC HALWANI and GISELLE HALWANI, agree that:

1.    Undersigned jointly and severally hereby unconditionally guarantees the full and prompt payment when due, whether by acceleration or otherwise, and at all times hereafter, of: (a) a Promissory Note of even date herewith secured by a mortgage on real estate in Miami-Dade County, Florida, in the principal amount of One Million Five Hundred Thousand and No/100 Dollars ($1,500,000.00), plus future advances thereunder, as provided in said mortgage, executed by Borrower payable to the order of Lender; (b) any and all extensions or renewals of said note, and all expenses, including attorneys' fees, incurred in the collection thereof, the enforcement of rights under any security therefore and the enforcement hereof; and (c) any indebtedness resulting from advance made on Borrower's behalf by Lender to protect or preserve the priority and security of its first lien (all the foregoing items, (a), (b) and (c), being hereinafter called the "Liabilities").

2.    Undersigned further jointly and severally unconditionally guarantees the faithful, prompt and complete compliance by Borrower with all terms and conditions of the Promissory Note, the Mortgage and Security Agreement securing payment of the Liabilities and all other agreements, documents and instruments securing payment of the Liabilities or related thereto (such Promissory Note, Mortgage Security Agreement and all other instruments collectively referred to hereinafter as the "Loan Documents") and the payment of all costs, expenses, charges and other expenditures required to be made by Borrower, or which Borrower agrees to make, under the terms and provisions of any Loan Document.

3.    In the event Borrower fails to perform its covenants, agreements and undertakings as provided in any Loan Document or otherwise defaults under any of the Loan Documents, Lender shall first foreclose the Mortgage in the manner provided by applicable law and shall first proceed against the Borrower and exhaust any security held by Borrower and all remedies available to Lender against Borrower prior to proceeding against Guarantor. Lender shall apply all foreclosure proceeds to the debt secured by the Loan Documents prior to seeking recovery against the Guarantor.

4.    The obligations of the undersigned hereunder are independent of the obligations of Borrower, and a separate action or actions for payment, damages or performance may be brought and prosecuted against the undersigned, or any one of them, whether or not an action is brought against Borrower or the security for Borrower's obligations, and whether or not

Initials    Initials

Borrower be joined in any such action or actions, and whether or not notice be given or demand be made upon Borrower.

5.    Undersigned hereby transfers and conveys to Lender any and all balances, credits, deposits, accounts items and monies of the undersigned now or hereafter in the possession or control of, or otherwise with, Lender, or Lender's duly authorized agent or attorney and Lender is hereby given a second lien upon, and a security interest in, all property of the undersigned of every kind and description now or hereafter in the possession or control of Lender for any reason, including all dividends and distributions on or other rights in connection therewith.

6.    Lender may, without demand or notice of any kind, at any time when any amount shall be due and payable hereunder by any of the undersigned, appropriate and apply toward the payment of such amount, and in such order of application as Lender may from time to time elect, any property, balances, credits, deposits, accounts, items or monies of such undersigned in the possession or control of Lender for any purpose.

7.    Lender may, from time to time, after written notice to the undersigned (or any of them) and without affecting, diminishing or releasing the liability of the undersigned (or any of them), (a) retain or obtain a security interest in any property to secure any of the Liabilities or any obligation hereunder, (b) retain or obtain the primary or secondary liability of any party or parties, in addition to the undersigned, with respect to any of the Liabilities, (c) extend or renew for any period (whether or not longer than the original period), alter or exchange any of the Liabilities without increasing Guarantor's liability as described herein.

8.    In the event that Borrower is in default, after any applicable notice and cure period, any amount received by Lender from whatever source and applied by it toward the payment of the Liabilities shall be applied in such order of application as Lender may from time to time elect.

9.    The undersigned hereby expressly waives: (a) notice of the acceptance of this Continuing Guaranty, (b) notice of the existence or creation of any Loan Document or all or any of the Liabilities, (c) presentment, demand, notice of dishonor, protest, and all other notices whatever. Lender shall use due diligence in collection or protection of, or realization upon, any security for any of the Liabilities or in enforcing any remedy available to it under any Loan Document prior to resorting to Guarantor for collection of the deficiency, if any.

10.    INTENTIONALLY DELETED

11.    The creation of existence from time to time of Liabilities in excess of the amount to which the right of recovery under this Continuing Guaranty is limited is hereby authorized, without notice to the undersigned (or any of them), shall in no way affect or impair this Continuing Guaranty.

Initials    Initials

12.     Lender may, after written notice, sell, assign or transfer all or any of the Liabilities, and in such event each and every immediate and successive assignee, transferee, or holder of all or any of the Liabilities, shall have the right to enforce this Continuing Guaranty, by suit or otherwise, for the benefit of such assignee, transferee or holder as fully as if such assignee, transferee or holder were herein by name specifically given such tights, powers and benefits. Lender shall have an unimpaired right, prior and superior to that of any such assignee, transferee or holder, to enforce this guaranty for the benefit of Lender, as to so much of the Liabilities as it has not sold, assigned or transferred provided said assignee, transferee or holder provides written notice to Borrower and Guarantor.

13.     No delay or failure on the part of Lender in the exercise of any right or remedy shall operate as a waiver thereof and no single or partial exercise by Lender of any rights or remedy herein shall preclude other or further exercise thereof or the exercise of any other right or remedy whether contained herein or in the Promissory Note, Mortgage and Security Agreement, or any other Loan Document. No action of Lender permitted hereunder shall in any way impair or affect this Continuing Guaranty. Nor right or power of the Borrower or anyone else to assert any claim or defense as to the invalidity or unenforceability of any Loan Document or of the Liabilities shall impair or affect the obligations of the undersigned hereunder. Until all of the Liabilities shall have been paid to Lender in full, the undersigned shall have no right to subrogation, and until such time the undersigned waive any right to enforce any remedy which Lender now has or may hereafter have against Borrower, and waive any benefit of and any right to participate in any security now or hereafter held by Lender.

14.     It is fully understood that until each and every one of the covenants and agreements of this Continuing Guaranty are fully performed, the undersigned's obligations shall not be released, in whole or in part, by any action or thing which might, but for this provision of this instrument , be deemed a legal or equitable discharge of a surety or guarantor, or by reason of any waiver, extension, modification, forbearance or delay or other act or omission of Lender or its failure to proceed promptly or otherwise, or  by reason of any action taken or omitted by Lender, whether or not such action or failure to act varies or increases the risk of or affects the rights or remedies of the undersigned, or  by reason of any further dealings  between Borrower, Lender or any other guarantor, and the undersigned hereby expressly waives and surrenders any defense to its liability hereunder based upon any of the foregoing acts, omissions, things agreements or waivers of any of them; it being the purpose and intent of the parties hereto that the covenants, agreements and all obligations hereunder are absolute, unconditional and irrevocable under any and all circumstances except as provided hereinafter.

15.     Any notice, demand or request by Lender, its successor or assigns, to the undersigned shall be in writing, and shall be deemed to have been duly given or made if either delivered personally to the undersigned or mailed by certified mail addressed to the undersigned at the address for each guarantor specified below:

Initials        Initials

ISAAC HALWANI
3340 N.E. 190th St, Apt 907
Aventura, FL 33180

GISELLE HALWANI
3340 N.E. 190th St, Apt 907
Aventura, FL 33180

16.     Lender shall be entitled to assign this Continuing Guaranty and all of its rights, privileges, interests and remedies hereunder to any other person, firm, entity, bank or corporation whatsoever with written notice to or consent by the undersigned, and such assignee shall be entitled to the benefits of this Continuing Guaranty and to exercise all such rights, interests and remedies as fully as Lender.

17.     Provided that no default or Event of Default (as that term is defined in the Mortgage and Security Agreement heretofore mentioned) then exists under any Loan Document, this Continuing Guaranty shall terminate when, and only when, each of the following conditions shall have been met: (a) Lender shall have been paid in full, including interest thereon, for all Liabilities.  When such conditions have been met, Lender shall furnish written cancellation of this Continuing Guaranty.

18.     This Continuing Guaranty shall inure to the benefit of Lender, its successors and assigns, and shall bind the undersigned, together with their heirs, legal representatives, successors and assigns.  If more than one party shall execute this Continuing Guaranty, the term "undersigned" shall mean all parties executing this Continuing Guaranty.

19.     This Continuing Guaranty shall be construed in accordance with the laws of the State of Florida, and such laws shall govern the interpretation, construction and enforcement hereof.  Wherever possible each provision of this Continuing Guaranty shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this Continuing Guaranty shall be prohibited by or invalid under such law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Continuing Guaranty.

20.     THE UNDERSIGNNED HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY AND ALL RIGHT THEY MAY HAVE TO A TRIAL BY JURY IN RESPECT TO ANY LITIGATION (INCLUDING BUT NOT LIMITED TO, ANY CLAIMS, CROSS CLAIMS OR THIRD PARTY CLAIMS ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS CONTINUING GUARANTYORANYOTHERLOAN DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED HEREIN.    THE UNDERSIGNED HEREBY CERTIFIES THAT NO REPRESENTATIVE OR AGENT OF THE LENDER NOR THE LENDER'S COUNSEL HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE LENDER WOULD NOT, IN THE EVENT OF SUCH

Page 4 of 5 - Continuing Guaranty

~~Initials~~    Initials

LITIGATION, SEEK TO ENFORCE THIS WAIVER OF RIGHT TO JURY TRIAL PROVISION. THE UNDERSIGNED ACKNOWLEDGE THAT THE LENDER HAS BEEN INDUCED TO ENTER INTO THIS LOAN FOR WHICH THIS GUARANTY APPLIES, INCLUDING THIS GUARANTY, BY, INTER ALIA, THE PROVISIONS OF THIS PARAGRAPH.

Signed, sealed and delivered this 7th day of March, 2019.

In the presence of:

_____
Witness Signs

_____
ISAAC HALWANI

_Eric C. Schwartz_
Witness Prints Name

_____
Witness Signs

_____
GISELLE HALWANI

CLARENCE BARTLETT
Witness Prints Name

STATE OF FLORIDA

COUNTY OF BROWARD

The foregoing Continuing Guaranty was acknowledged before me this 7 day of March, 2019, by ISAAC HALWAN and GISELLE HALWANI, who are [ ] personally known to me or have [✓] produced FL Driver's Licenses as identification.

My Commission Expires:
    12/14/2021

_____
Notary Public

YAN YU WU
COMMISSION
Number
GG168350
EXPIRES
December 14, 2021
Bonded thru Aaron Notary
Notary Public, State of Florida

Page 5 of 5 - Continuing Guaranty

_____    _____
Initals    Initials

CFN: 20190157334 BOOK 31360 PAGE 4924
DATE:03/12/2019  09:17:28 AM
MTG DOC 5,250.00
INTANGIBLE 3,000.00
HARVEY RUVIN, CLERK OF COURT, MIA DADE CTY

This Instrument Was Prepared By
Eric R. Schwartz, Esq.
Weitz & Schwartz, P.A.
900 S.E. 3rd Avenue, Suite 204
Fort Lauderdale, FL 33316
19-26047 M

## MORTGAGE AND SECURITY AGREEMENT

**THIS MORTGAGE AND SECURITY AGREEMENT,** dated this 7th day of March, 2019, by 274 ATLANTIC ISLES LLC, a Delaware limited liability company, whose post office address is 16565 N.W. 15th Ave., Miami, FL 33169, hereinafter the "Mortgagor," which term as used in every instance shall include the Mortgagor's successors, legal representatives and assigns, either voluntary by act of the parties or involuntary by operation of law and shall denote the singular and/or plural, the masculine and/or feminine and natural and/or artificial persons, whenever and wherever the context so requires or admits, and Eric R. Schwartz, as Trustee UTA dated March 4, 2019, reserving unto said Trustee or its successors, the power and authority to protect, conserve, sell, lease, encumber, or otherwise manage and dispose of the real property described herein unto said trustee whose address is 2412 Barcelona Drive, Fort Lauderdale, FL 33301, hereinafter called the "Mortgagee," which term as used in every instance shall include the Mortgagee's successors, legal representatives and assigns, including all subsequent assignees, either voluntary or by act of the parties or involuntary by operation of law.

## WITNESSETH;

**THAT** for divers good and valuable considerations, and to secure the payment of the aggregate sum of money named in the Promissory Note of even date herewith, hereinafter mentioned, together with interest thereon or so much thereof as may be advanced, and all other sums of money secured hereby as hereinafter provided, the Mortgagor does grant and confirm unto the Mortgagee a full and complete lien on the following described real estate of which the Mortgagor is now seized and possessed, and in actual possession situate in the County of Miami-Dade, State of Florida, legally described as follows:

Lots 101 and 102, ATLANTIC ISLAND, according to the Plat thereof recorded in Plat Book 34, Page 17 of the Public Records of Miami-Dade County, Florida, TOGETHER WITH a Propriety Interest in the South 40 feet of the North 59.67 feet of Lot 96, of TATUM'S OCEAN BEACH PARK, according to the Plat thereof recorded in Plat Book 5, Page 35 of the Public Records of Miami-Dade County, Florida, lying East of the East right-of-way line of the 100 foot right-of-way of State Road No. A1A recorded in Plat Book 46, Page 40 of the Public Records of Miami-Dade County, Florida.

1

EXHIBIT D

CFN: 20190157334 BOOK 31360 PAGE 4925

**THIS IS A FIRST MORTGAGE.**

**TOGETHER WITH** the following property and rights (the Premises, together with such property and rights, being hereinafter collectively called "Mortgaged Property" or "Property"):

a.      All right, title and interest of Mortgagor in and to the land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Premises, and in and to the appurtenances thereto;

b.      All machinery, apparatus, equipment, fittings, fixtures and articles of personal property of every kind and nature whatsoever now or hereafter located in any building or upon the Premises, or any part thereof, and used or usable in connection with any present or future occupancy of said building and now owned or hereafter acquired by Mortgagor; and,

c.      All agreements, building permits, governmental approvals, vested rights for development, licenses, agreements with utility companies, water and sewer capacity reservation agreements, and all other governmental consents and approvals, engineering plans, site plans, feasibility studies, surveys, architectural plans and specifications, agreements with architects and engineers, maintenance and service contracts, management contracts, now or hereafter existing, which pertain or relate to the Premises.

d.      Any and all awards of payments, including interest thereon, and the right to receive the same, which may be made with respect to the Premises as a result of the exercise of the right of eminent domain, the alteration of the grade of any street, any other injury to, or decrease in the value of, the Premises, or proceeds of insurance awards, to the extent of all amounts which may be secured by this Mortgage at the date of receipt of any such award or payment by Mortgagee, and of the reasonable attorneys' fees, costs and disbursements incurred by Mortgagee in connection with the collection of such award or payment; and Mortgagor agrees to execute and deliver, from time to time, such further instruments as may be requested by Mortgagee to confirm such assignment to Mortgagee of any such award or payment.

**TO HAVE AND TO HOLD** the above described property unto the Mortgagee, its successors and assigns forever.

The Mortgagor hereby covenants with the Mortgagee that the Mortgagor is indefeasibly seized with the absolute and fee simple title to said property, and has full power and lawful authority to sell, convey transfer and mortgage the same; that it shall be lawful at any time hereafter for the Mortgagee to peaceably and quietly enter upon, have, hold and enjoy said property, and every part thereof; that this Mortgage is and will remain a valid and enforceable lien on the mortgaged property that said property is free and discharged from all liens, encumbrances and claims of any kind, including taxes and assessments; and that the Mortgagor hereby fully warrants unto the Mortgagee the title to said property and will defend the same against the lawful claims and demands of all persons whomsoever.

CFN: 20190157334 BOOK 31360 PAGE 4926

**NOW, THEREFORE,** the condition of this Mortgage is such that if the Mortgagor shall well and truly pay unto the Mortgagee the indebtedness evidenced by that certain Promissory Note (hereinafter sometimes called "Note") of even date herewith made by TCB & GSD CONSULTING LLC, a Florida limited liability company (hereinafter referred to as "Borrower") and payable to the Mortgagee in the principal sum of One Million Five Hundred Thousand and No/100 Dollars ($1,500,000.00) together with interest as set forth therein, and that certain Continuing Guaranty of even date herewith (hereinafter sometimes called "Guaranty") made by the Mortgagor, ISAAC HALWANI, and GISELLE HALWANI in favor of Mortgagee, and shall perform, comply with and abide by each and every of the stipulations, agreements, conditions and covenants contained and set forth in this Mortgage and in the Note and Guaranty secured hereby, then this Mortgage and the estate hereby created shall cease and be null and void.   All reference herein to Note, Promissory Note or Mortgage Note shall mean and refer to the Note.

**AND** the Mortgagor does hereby covenant and agree:

1.      To perform, comply with and abide by each and every of the stipulations, agreements, conditions and covenants contained and set forth in this Mortgage and Security Agreement.

2.      To permit, commit or suffer no waste; to comply with or cause to be complied with, all statutes, ordinances and requirements of any governmental or other authority relating to the mortgaged property; and to do or permit to be done to said premises nothing that will alter or change the use and character of said property or in any way impair or weaken the security of this Mortgage.  And in case of the refusal, neglect or inability of the Mortgagor to repair and maintain said property, the Mortgagee may, at its option, make such repairs or cause the same to be made and advance monies in that behalf.

3.      Mortgagor will promptly cure any notice of violation of law and comply with any order entered pursuant to said violation; that if Mortgagor shall default in making such payment and obtaining such discharge or in curing any violation affecting the Property, Mortgagee may make such payment, together with penalties and interest thereon, and obtain such discharge and cure any such violation, and the amount of such payment and the expenses incurred by Mortgagee in obtaining such discharge and curing any violation shall thereupon be secured by this Mortgage and become a lien on the Mortgaged Property; and that Mortgagor will repay the amount of such payment and such expenses to Mortgagee, together with interest thereon at the highest lawful rate, within fifteen (15) days after demand for said payment is made by Mortgagee to Mortgagor.

4.      The Mortgagor, immediately upon obtaining knowledge of the institution of any proceedings for the condemnation of the Premises or any portion thereof, will notify the Mortgagee of the pendency of such proceedings.  The Mortgagee may participate in any  such proceedings and the Mortgagor, from time to time, will deliver to the Mortgagee all instruments requested by it to permit such participation.

5.      That, notwithstanding any taking by eminent domain, alteration of the grade of any street or other injury to or decrease in value of the Mortgaged Property by any public or

CFN: 20190157334 BOOK 31360 PAGE 4927

quasi-public authority or corporation, Mortgagee shall cause Borrower to continue to pay interest as provided in the Note until any such award or payment shall have been actually received by Mortgagee and any reduction in the principal sum resulting from the application by Mortgagee of such award or payment, as hereinafter set forth, shall be deemed to take effect only on the date of such receipt; that said award or payment may be applied, in such proportions and priority as Mortgagee in Mortgagee's sole discretion may elect, to the payment of principal whether or not then due and payable, or any sums secured by this Mortgage and/or to payment to Mortgagor, on such terms as Mortgagee may specify, to be used for the sole purpose of altering, restoring or rebuilding any part of the Mortgaged Property which may have been altered, damaged or destroyed as a result of any such taking, alteration of grade, or other injury to the Mortgaged Property; and that, if prior to the receipt by Mortgagee of such award or payment, the Mortgagee acquires title to the Property through judicial sale or deed in lieu of foreclosure, then such award shall be applied to payment of the Mortgage debt remaining unsatisfied after such sale or deed in lieu of foreclosure of the Mortgaged Property, the Mortgagee shall be entitled to receive such award after such sale of the Mortgaged Property through judicial proceedings, with legal interest thereon, whether or not a deficiency judgment on this Mortgage shall have been sought or recovered or denied, and of the reasonable attorney's fees, costs and disbursements incurred by Mortgagee in connection with the collection of such award or payment.

6.     The Mortgagor will, at the cost of the Mortgagor and without expense to the Mortgagee, do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assigns, notices of assignments, transfers and assurances as the Mortgagee shall from time to time require, for the better assuring conveying, assigning, transferring and confirming unto the Mortgagee the property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which the Mortgagor may be or may hereafter become bound to convey or assign to the Mortgagee, or for carrying out the intention or facilitating the performance of the terms of this Mortgage or for filing, registering or recording this Mortgage and on demand will execute and deliver, and hereby authorizes the Mortgagee to execute in the name of the Mortgagor to the extent it may lawfully do so, one or more financing statements, chattel mortgages or comparable security instruments, to evidence more effectively the lien hereof upon the mixed or personal property.

7.    a.    The Mortgagor forthwith upon the execution and delivery of this Mortgage and thereafter, from time to time, will cause this Mortgage and any security instrument creating a lien or evidencing the lien hereof upon the mixed or personal property and each instrument of further assurance to be filed, registered or recorded in such manner and in such places as may be required by any present or future law in order to publish notice of and fully protect the lien hereof upon, and the interest of the Mortgagee in, the Mortgaged property.

b.    The Mortgagor will pay all filing, registration or recording fees and all expenses incident to the preparation, execution and acknowledgment of this Mortgage, any mortgage supplemental hereto, any security instrument with respect to the chattels, and any instrument of further assurance, and all federal, state, county and municipal stamp taxes and other taxes, duties, imposts, assessments and charges, other than income taxes, arising out of or in connection with the execution and delivery of this Mortgage, any mortgage

4

CFN: 20190157334 BOOK 31360 PAGE 4928

supplemental hereto, any security instrument with respect to the chattels or any instrument of further assurance.

8.      INTENTIONALLY DELETED

9.      The Mortgagor, from time to time, when the same shall become due, will pay and discharge all taxes of every kind and nature (including real and personal property taxes), all general and special assessments, levies, permits, inspection and license fees, all water and sewer rents and charges, and all other public charges whether of a like or different nature, imposed upon or assessed against it or the Mortgaged Property or any part thereof or upon the revenues, rents, issues, income and profits of the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. The Mortgagor will upon the request of the Mortgagee, deliver to the Mortgagee receipts evidencing the payment of all such taxes, assessments, levies, fees, rents and other public charges imposed upon or assessed against it or the Mortgaged Property or the revenues, rents, issues, income or profits thereof.

10.     The Mortgagor will pay from time to time when the same shall become due, all claims and demands of mechanics, materialmen, laborers, and others which, if unpaid, might result in or permit the creation of a lien on the Mortgaged Property, whether paramount or subordinate to this Mortgage, or any part thereof, or on the revenues, rents, issues, income and profits arising therefrom and in general will do or cause to be done everything necessary so that the first lien of this Mortgage shall be preserved, at the cost of the Mortgagor, without expense to the Mortgagee.

11.     a.      That the Mortgagor, to the extent applicable, will keep all real, mixed and personal property now or hereafter encumbered by the lien of this Mortgage insured, as may be required from time to time by the Mortgagee, against loss by fire, windstorm and other hazards, casualties and contingencies and to pay promptly when due all premiums for such insurance. The amounts of insurance required by Mortgagee shall be the minimum amounts for which said insurance shall be written and it shall be incumbent upon the Mortgagor to maintain such additional insurance as may be necessary to meet and comply fully with all co-insurance requirements contained in said policies to the end that said Mortgagor is not a co-insurer thereunder. Insurance shall be written by a company or companies approved by the Mortgagee and all policies and renewals thereof shall be held by the Mortgagee. All detailed designations by the Mortgagor which are accepted by the Mortgagee relating to insurance, now existing or hereafter made, shall be in writing and shall be a part of this Mortgage as fully as though set forth verbatim herein, and shall govern both parties hereto and their successors and assigns. No lien upon any of said policies of insurance or upon refund or return premium which may be payable on the cancellation or termination thereof shall be given to anyone other than the Mortgagee, except by proper endorsement affixed to such policy and approved by the Mortgagee. Each policy of insurance shall have affixed thereto a standard mortgagee form clause without contribution, making all loss or losses under such policy payable to the Mortgagee as its interest may appear. In the event any sum or sums of money become payable thereunder, the Mortgagee shall have the option to receive and apply the same on account of the indebtedness hereby secured, or to permit the Mortgagor to receive it and use it, or any part thereof, without thereby waiving or impairing any equity, lien or right under and by virtue of this Mortgage. In the event of loss or physical damage to

CFN: 20190157334 BOOK 31360 PAGE 4929

the Mortgaged Property, the Mortgagor shall give immediate notice thereof by mail to the Mortgagee, and the Mortgagee may make proof of loss if the same is not made promptly by Mortgagor. In the event of foreclosure of this Mortgage or other transfer of title to the Mortgaged Property in extinguishment of the indebtedness secured hereby, all right, title and interest of the Mortgagor in and to any insurance policies then in force shall pass to the Purchaser.

        b.        Provided no Event of Default then exists hereunder or under the Promissory Note, the net insurance proceeds and net proceeds of any condemnation award (in each case after deduction only of Mortgagee's reasonable costs and expenses, if any, in collecting the same) shall be made available for the restoration or repair of the Property if, in Mortgagee's sole judgment (a) restoration or repair is economically feasible, (the value of Mortgagee's security is not reduced), the loss or condemnation, as applicable, does not occur in the three (3) month period preceding the stated maturity date in the Note, and (b) Mortgagor deposits with Mortgagee an amount, in cash, which Mortgagee, in its sole discretion, determines is necessary, in addition to the net insurance proceeds or net proceeds of any condemnation award, as applicable, to pay in full the cost of the restoration or repair. Mortgagor's deposits made pursuant to this paragraph shall be used before the net insurance proceeds or net proceeds of any condemnation award, as applicable, for such restoration or repair. If the net insurance proceeds or net proceeds of any condemnation award, as applicable, are made available for restoration or repair, such work shall be completed by Mortgagor in an expeditious and diligent fashion, and in compliance with all applicable laws, rules and regulations. Any condemnation award, as applicable, shall be disbursed pursuant to a construction escrow acceptable to Mortgagee. If following the final payment for the completion of such restoration or repair there are any net insurance proceeds or net proceeds of any condemnation award, as applicable, remaining such proceeds shall be paid (i) to Mortgagor to the extent Mortgagor was required to make a deposit pursuant to this paragraph and (ii) then to Mortgagee. If an Event of Default then exists, or any of the conditions set forth in subparagraphs (a) through (d) of this Paragraph 11(b) have not been met or satisfied, the net insurance proceeds or net proceeds of any condemnation award, as applicable shall be applied to the indebtedness secured hereby, whether or not due and payable, with any excess paid to Mortgagor.

        12.    a.    The Mortgagor shall not transfer, or agree to transfer, in any manner, either voluntarily or involuntarily, directly or indirectly by operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest therein, without in any such case where applicable the prior written consent of Mortgagee. Mortgagee may grant or deny such consent in its sole discretion and, if consent should be given, any such transfer shall be subject to this Mortgage and the other documents, and any such transferee shall assume all of Mortgagor's obligations hereunder and thereunder and agree to be bound by all provisions and perform all obligations contained herein and therein, Mortgagor covenanting and agreeing that the rights and obligations of Mortgagee hereunder and thereunder shall in no way be altered, diminished or otherwise affected thereby. Consent to one such transfer shall not be deemed a waiver of the right to require consent to future or successive transfers. As used in this Paragraph 12, "transfer" shall include without limitation any transfer of more than 50% of the membership interest of mortgagor, sale, assignment, lease or conveyance of the Mortgaged Property or any part thereof, or any interest therein, except leases for occupancy subordinate to

6

CFN: 20190157334 BOOK 31360 PAGE 4930

this Mortgage.

    b.  The Mortgagor shall not encumber, or agree to encumber in any manner, either voluntarily or involuntarily, directly or indirectly, by operation of law or otherwise, all or any portion of the Mortgaged Property or any interest therein, without, in any such case, the prior written consent of the Mortgagee. The Mortgagee may grant or deny such consent in its sole discretion and, if consent should be given, any such encumbrance shall not be deemed to be a waiver of the right to require consent to future or successive encumbrances. As used herein, "encumber" shall include, without limitation, the placing or permitting the placing of any mortgage assignment of rents or other security device, including, but not limited to, a wrap around mortgage, on the Mortgaged Property.

    13.  The Mortgagee may, at its option and without waiving of its right to accelerate the indebtedness hereby secured and to foreclose the same, pay either before or after delinquency any or all of those certain obligations required by the terms hereof to be paid by the Mortgagor for the protection of the mortgage securing or for the collection of the indebtedness hereby secured. All sums so advanced or paid by the Mortgagee shall be added to the Mortgagor's indebtedness secured hereby and every payment so made by Mortgagee shall bear interest from the date thereof at the highest rate allowed by law and shall be due and payable in all respects to the terms, conditions and covenants of the aforesaid Note and this Mortgage, as fully and to the same extent as though a part of the original indebtedness evidenced by said Note and secured by this Mortgage.

    14.  The Mortgagor immediately upon obtaining knowledge of any governmental lien on the Premises or any portion thereof will notify the Mortgagee of the pendency of such lien no later than thirty (30) days after the filing of such lien and thereafter Mortgagor shall diligently pursue the cure and release of such lien. Mortgagor's failure to give such thirty (30) day notice or to cure and release such lien shall constitute a default of this Mortgage and shall entitle Mortgagee to collect default interest at the highest rate allowed by law from the date of the filing of the lien.

    15.  To pay all and singular costs, charges and expenses including attorneys' fees and abstract costs, reasonably incurred or paid at any time by the Mortgagee because of the failure of the Mortgagor to perform, comply with and abide by each and every stipulation, agreement, condition and covenant of the Note executed by Borrowers and of this Mortgage, or either. Said attorney's fee shall include all reasonable fees incurred Mortgagee prior to the commencement of any legal actions, on the trial and appellate courts, and on any bankruptcy proceeding.

    16.  That in order to accelerate the maturity of the indebtedness hereby secured because of the failure of the Mortgagor to pay any tax assessment, liability, obligation or encumbrance upon said property as herein provided, it shall not be necessary nor requisite that the Mortgagee shall first pay the same.

    17.  That any failure by Mortgagee to insist upon the strict performance by Mortgagor of any of the terms and provisions hereof shall not be deemed to be a waiver of any of the terms and provisions hereof, and Mortgagee, notwithstanding any such failure, shall have

CFN: 20190157334 BOOK 31360 PAGE 4931

the right thereafter to insist upon the strict performance by Mortgagor of any and all of the terms and provisions of this Mortgage to be performed by Mortgagor. That Mortgagee may release, regardless of consideration, any part of the security held for the indebtedness secured by this Mortgage without, as to the remainder of the security, in any way impairing or affecting the lien of this Mortgage or the priority of such lien over any subordinate lien, and that the Mortgagee may resort, for the payment of the indebtedness secured by this Mortgage, to any other security therefor held by the Mortgagee in such order and manner as Mortgagee may elect.

18.     The following shall be considered an Event of Default under this Mortgage (a) Borrower shall fail, neglect or refuse to pay on or before the due date the amounts required to be paid by the Note hereby secured or the interest therein specified or any of the sums of money herein referred to or hereby secured, after the applicable notice and Borrower's failure to cure ("Monetary Default"), and (b) Mortgagor shall otherwise duly, fully, and promptly fail, neglect or refuse to perform, execute, comply with and abide by each, every or any of the covenants, conditions or stipulations of this Mortgage ("Non- Monetary Default") within fifteen (15) days after written notice for Non-Monetary Defaults and demand to satisfy, comply with or abide by same (provided, however, if such covenants, conditions or stipulations cannot by its nature be cured within fifteen (15) days and if Mortgagor commences to cure such failure promptly after written notice and thereafter diligently pursues the curing thereof, Mortgagor shall have a reasonable period of time to effect a cure), then and in either or any of such events, without any additional notice or demand, the said aggregate sum mentioned in said Note, less previous payments if any, and any and all sums mentioned herein or secured hereby shall become due and payable forthwith or thereafter at the continuing option of the Mortgagee as fully and completely as if said aggregate sums were originally stipulated to be paid at such time, anything in said Note or herein to the contrary notwithstanding, and the Mortgagee shall be entitled thereupon or thereafter, without notice or demand, to institute suit at law or in equity to enforce the rights of the Mortgagee hereunder or under said Promissory Note. In the event of any default or breach on the part of the Mortgagor hereunder or under said Promissory Note (following applicable notices and the passage of applicable cure periods), the Mortgagee shall have the continuing option to enforce payment of all sums secured hereby by action at law or by suit in equity to foreclose this Mortgage, either or both, concurrently or otherwise, and one action or suit shall not abate or be a bar to or waiver of the Mortgagee's right to institute or maintain the other, provided said Mortgagee shall have only one (l) payment and satisfaction of said indebtedness.

19.     That in the event that Mortgagor or Borrower shall (l) consent to the appointment of a receiver, trustee, or liquidator of all or a substantial part of Mortgagor's or Borrower's assets, or (2) be adjudicated a bankrupt, or admit in writing its inability to pay its debts as they become due or (3) make a general assignment for the benefit of creditors or (4) file a petition or answer seeking reorganization or arrangement with creditors, or to take advantage of any insolvency law or (5) file an answer admitting the material allegations of a petition filed against the Mortgagor or Borrower in any bankruptcy, reorganization or insolvency proceeding or (6) action shall be taken by the Mortgagor or Borrower for the purpose of effecting any of the foregoing or (7) any order, judgment or decree shall be entered upon an application of a creditor or Mortgagor or Borrower by a court of competent jurisdiction approving a petition seeking appointment of a receiver or trustee of all or a substantial part of the Mortgagor's or Borrower's assets and such order, judgment or decree shall continue

8

CFN: 20190157334 BOOK 31360 PAGE 4932

unstayed and in effect for any period of thirty (30) consecutive days, the Mortgagee may declare the Note hereby secured forthwith due and payable, whereupon the principal and the interest accrued on the Note and all other sums hereby secured shall become forthwith due and payable as if all of the said sums of money were originally stipulated to be paid on such day; and thereupon the Mortgagee without notice or demand may prosecute a suit at law and/or in equity as if all monies secured hereby had matured prior to its institution.

20.     If foreclosure proceedings should be instituted against the Property covered by this Mortgage upon any other lien or claim whether alleged to be superior or junior to the lien of this Mortgage, the Mortgagee may, at its option, immediately upon institution of such suit or during the pendency thereof, declare this Mortgage and the indebtedness secured hereby due and payable forthwith and may at its option proceed to foreclose this Mortgage.

21.     It is further covenanted and agreed by said parties that in the event of a suit being instituted to foreclose this Mortgage, the Mortgagee shall be entitled to apply at any time pending such foreclosure suit to the court having jurisdiction thereof for the appointment of a receiver of all and singular the Mortgaged Property, and thereupon it is hereby expressly covenanted and agreed that the court shall forthwith appoint such receiver with the usual powers and duties of receivers in like cases; and said appointment shall be made by the court as a matter of strict right to the Mortgagee, and without reference to the adequacy or inadequacy of the value of the property hereby mortgaged, or to the solvency or insolvency of the Mortgagor or any other party defendant to such suit. The Mortgagor hereby specifically waives the right to object to the appointment of a receiver as aforesaid and hereby expressly consents that such appointment shall be made as an admitted equity and as a matter of absolute right to the Mortgagee and that the same may be done without notice to the Mortgagor.

22.     During the continuance of an Event of Default, and to the extent applicable, the Mortgagee personally, or by its agents or attorneys, may enter (following any applicable notice to Mortgagor and the passage of any applicable cure period) into and upon all or any part of the Premises, and each and every part thereof, and may exclude the Mortgagor, its agents and servants wholly therefrom; and having and holding the same, may use, operate, manage and control the Premises, either personally or by its superintendents, managers agents, servants, attorneys or receivers; and upon every such entry, the Mortgagee at the expense of the Mortgaged Property or the Mortgagor from time to time either by purchase, repairs or construction, may maintain and restore the Mortgaged Property, whereof it shall become possessed as aforesaid, may complete the construction or development of the improvements and, in the course of such completion may make such changes in the contemplated improvements as it may deem desirable and may insure the same; and likewise, from time to time at the expense of the Mortgaged Property or the Mortgagor, the Mortgagee may make all necessary or proper repairs, renewals and replacements and such useful alterations, additions, betterments and improvements thereto and thereon as to it may deem advisable; and in every such case the Mortgagee shall have the right to manage and operate the Mortgaged Property and to carry on the business thereof and exercise all rights and powers of the Mortgagor with respect thereto either in the name of the Mortgagor or otherwise as it shall deem best; and the Mortgagee shall be entitled to collect and receive all earnings, revenues, rents, issues, profits and income of the Mortgaged Property and every

CFN: 20190157334 BOOK 31360 PAGE 4933

part thereof, all of which shall for all purposes constitute property of the Mortgagor and after deducting the expenses of conducting the business thereof and of all maintenance, repairs, renewals, replacements, alterations, additions, betterments and improvements and amounts necessary to pay for taxes, assessments, insurance and prior or other proper charges upon the Mortgaged Property or any part thereof, as well as just and reasonable compensation for the services of the Mortgagee and for all attorneys, agents, clerks, servants and others employed by it properly engaged and employed, the Mortgagee shall apply the monies arising as aforesaid, first to the payment of the principal of the Note and the interest thereon, when and as the same shall become payable and second, to the payment of any other sums required to be paid by the Mortgagor under this Mortgage.

23.    INTENTIONALLY DELETED

24.    In case of proceedings by or against the Mortgagor or Borrower in insolvency or bankruptcy or any proceedings for its reorganization or involving the liquidation of its assets then, and in such case, the Mortgagee shall be entitled to prove the whole amount of principal and interest due upon the Note to the full amount thereof and all other payments, charges and costs due under this Mortgage, without deducting therefrom any proceeds obtained from the sale of the whole or any part of the Mortgaged Property; provided, however, that in no case shall the Mortgagee receive a greater amount than such principal and interest and such other payments, charges and costs from the aggregate amount of the proceeds of the sale of the mortgaged property and the distribution from the estate of the Mortgagor.

25.    That the Mortgagee shall have the right from time to time, to take action to recover any sums, whether interest, principal or any installment of either, or any other sums required to be paid under the terms of this Mortgage, as the same become due, without regard to whether or not the principal sum secured, or any other sums secured, by the Note and Mortgage, shall be due and without prejudice to the right of action, for a default or defaults by Mortgagor existing at the time such earlier action was commenced. No remedy conferred or reserved to the Mortgagee herein or in the Mortgage Note is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given to the Mortgagee now or hereafter existing at law or in equity or by statute. No delay or omission of the Mortgagee to exercise any right or power accruing upon any event of default herein, or in the Mortgage Note, shall impair any such default or an acquiescence therein; and every power and remedy given by the Mortgage herein or in the Mortgage Note to the Mortgagee, may be exercised from time to time as often as may be deemed expedient by the Mortgagee. Nothing in this Mortgage or in the Note shall affect the obligation of the Borrower to pay the principal of, and interest on, the Note in the manner and at the time and place therein respectively expressed.

26.    The Mortgagor will not, at any time, insist upon or plead, or in any manner whatever, claim or take any benefit or advantage of, any stay or extension of moratorium law, any exemption from execution or sale of the mortgaged property or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Mortgage, nor claim, take or insist upon any benefit

10

CFN: 20190157334 BOOK 31360 PAGE 4934

or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction; nor, after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted, by any governmental authority or otherwise, to redeem the property so sold or any part thereof, and the Mortgagor hereby expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any power herein granted or delegated to the Mortgagee, but to suffer and permit the execution of every power as though no such law or laws had been made or enacted. The Mortgagor for itself and all who claim under it, waives, to the extent that it lawfully may, all right to have the mortgaged property marshalled or to direct to order of sale of the Mortgaged Property upon any foreclosure hereof.

27.    To the extent of the indebtedness of the Mortgagor to the Mortgagee described herein or secured hereby, the Mortgagee is hereby subrogated to the lien or liens and to the rights of the owners and holders thereof, of each and every mortgage, lien or other encumbrance on the land described herein which is paid and/or satisfied, in whole or in part, out of the proceeds of the loan described herein secured hereby, and the respective liens of said mortgages, liens or encumbrances, shall be and the same and each of them hereby is preserved and shall pass to and be held by the Mortgagee herein as security for the indebtedness to the Mortgagee herein described or hereby secured, to the same extent that it would have been preserved and would have been passed to and been held by the Mortgagee had it been duly and regularly assigned, transferred set over and delivered unto the Mortgagee by separate deed of assignment, notwithstanding the fact that the same may be satisfied and cancelled of record, it being the intention of the parties hereto that the same will be satisfied and cancelled of record by the holders thereof at or about the time of the recording of this Mortgage.

28.    In the event any one or more of the provisions contained in this Mortgage or in the Mortgage Note shall, for any reason, be held to be inapplicable, invalid, illegal or unenforceable in an respect, such inapplicability, invalidity, illegality or unenforceability shall, at the option of the Mortgagee, not affect any other provision of this Mortgage, but this Mortgage shall be construed as if such applicable, invalid, illegal or unenforceable provision had never been contained herein or therein.

29.    All notices hereunder shall be in writing and shall be deemed to have been sufficiently given or served for all purposes when presented personally or sent by facsimile (notice sent by facsimile shall be deemed given when such facsimile is received by the other party) or by registered or certified mail with return receipt requested to any party hereto at its address listed below or at such other address of which written notification has been given to the other party, as provided herein:

TO THE MORTGAGEE:          Eric R. Schwartz, as Trustee UTA
                           dated March 4, 2019
                           2412 Barcelona Drive
                           Fort Lauderdale, FL 33301

11

CFN: 20190157334 BOOK 31360 PAGE 4935

WITH COPY TO:                    Eric R. Schwartz, Esq.
                                Weitz & Schwartz, PA
                                900 S.E. 3rd Avenue, Suite 204
                                Ft Lauderdale, FL 33316

TO THE MORTGAGOR:               274 ATLANTIC ISLES LLC
                                16565 N.W. 15th Ave.,
                                Miami, FL 33169

    30.     All of the grants, covenants, terms, provisions and conditions herein shall run with the land and shall apply to, bind and inure to the benefit of the successors and assigns of the Mortgagor and successors and assigns of the Mortgagee.

    31.     That, if required by the Mortgagee, the said Mortgagor will pay unto the Mortgagee together with the monthly mortgage payment, a sum equal to one-twelfth (1/12th) of the annual amount necessary to pay all taxes and assessments against the said Mortgaged Property, said monthly sum to be reasonably estimated solely by the Mortgagee and calculated to be an amount not less than the amount of taxes assessed against said Mortgaged Premises for the previous year, and if further required by the Mortgagee to pay all insurance premiums in a manner and form as provided herein for the payment of taxes and assessments. All such sums paid to the Mortgagee under this paragraph shall be applied by the Mortgagee to the payment of such taxes and assessments.

    32.     That the Mortgagor will, on the request of the Mortgagee, furnish a written statement of the amount owing on the obligation which this Mortgage secures and therein state whether or not Mortgagor or Borrower claims any defenses or offsets thereto. The Mortgagee agrees that it will, on request of the Mortgagor furnish a written statement of the amount owing on the obligation which this Mortgage secures and therein state whether or not Borrower is current in its payments and whether Mortgagee has knowledge of any defaults hereunder specifying therein the nature of such defaults, if any.

    33.     The Mortgagor covenants that in the event the ownership of said property or any part thereof becomes vested in a person other than the Mortgagor, the Mortgagee may, without notice to the Mortgagor, deal with such successor or successors in interest with reference to this Mortgage, and the debt secured hereby in the same manner as with the Mortgagor and may forbear to sue or may extend time for payment of the debt secured thereby, without discharging or in any way affecting the liability of the Mortgagor hereunder or upon the debt hereby secured.

    34.     That this Mortgage cannot be changed orally.

    35.     That it is the intent hereof to secure payment of the Note whether the full amount thereof shall have been advanced to the Borrower at the date hereof or at a later date, and the Mortgagee may, at the sole option and discretion of the Mortgagee, from time to time make future advances to the Borrower, which advances shall be secured by this Mortgage, provided, however, that the total principal sum secured hereby and remaining unpaid including any such advances, shall not at any time exceed $3,000,000.00 or such other maximum amount as may from time to time be permitted by law. All such future advances

CFN: 20190157334 BOOK 31360 PAGE 4936

shall be made within the time limit authorized by Florida law for making valid future advances with interest and all indebtedness hereby. All provisions of this Mortgage shall apply to any future advances made pursuant to the provisions of this paragraph. Nothing herein contained shall limit the amount secured by this Mortgage, if such amount is increased by advances made by the Mortgagee as herein elsewhere provided and authorized for the protection of the security of the Mortgage.

36.    If from any circumstances whatever, fulfillment of any provision of this Mortgage or the Note secured by it at the time performance of said provision shall be due, shall involve transcending the limit of validity prescribed by the usury statutes of Florida, or any other law of Florida then ipso facto the obligation to be fulfilled shall be reduced to the limit of such validity.

37.    The Mortgagor agrees to pay all real and personal property taxes assessed against the demised premises and to present to the Mortgagee receipts evidencing said payments on or before December 31st of the year for which such taxes are assessed. A failure to comply with the terms of this paragraph shall be a default in this Mortgage and the Mortgagee shall thereafter have the right to accelerate the payment of the unpaid principal indebtedness and to enforce this Mortgage according to the terms hereof.    The Mortgagee is hereby expressly authorized at the option of the Mortgagee to advance all sums necessary to any real and personal property taxes unpaid on or after January 1st of the year for which such taxes are assessed, and all sums so advanced together with interest thereon at the highest lawful rate shall be determined additional monies owed by the Mortgagor to the Mortgagee, shall be payable on demand of the Mortgage, and secured by the lien of this Mortgage.

38.    From and after the occurrence of an Event of Default under this Mortgage the Note, which it secures, or both, or the maturity thereof, whether normal maturity or accelerated maturity, both the unpaid principal balance and accrued interest, on the Note, shall bear interest at the highest lawful rate.

39.    In the event any law is passed in the State of Florida which would impose upon the Mortgagee an obligation to pay any tax other than income taxes or the intangible personal property tax paid at the time of the recordation of this Mortgage, then and in such event, the Mortgagor immediately upon demand will reimburse the Mortgagee for the amount of such tax paid by Mortgagee. If the Mortgagor is prohibited by law from making such reimbursement to the Mortgagee, or if the payment of such reimbursement by the Mortgagor would result in the violation of any statute of the State of Florida, the Mortgagee, at its option, shall have the right to declare the unpaid principal indebtedness plus accrued interest immediately due and payable.

40.    In the event the Mortgagor shall fail to perform any covenant or condition of this Mortgage, which does not require the payment of money, and Mortgagor fails to commence action to cure such default(s) within a reasonable period of time after written notice and demand from the Mortgagee, Mortgagor's failure to commence such action or to proceed continuously and diligently thereafter to cure such failure shall constitute an Event of Default hereunder.

41.    This Mortgage shall be construed and governed by the laws of the State of Florida.

CFN: 20190157334 BOOK 31360 PAGE 4937

42.    In addition to the lien on and security interest in the realty and improvements created hereby, this Mortgage shall, to the extent applicable, constitute a security agreement with respect to all personal property secured hereby; and the Mortgagor hereby agrees to execute and deliver on demand and hereby irrevocably authorizes and appoints the Mortgagee, the attorney-in-fact of the Mortgagor, jointly or severally, to execute in the name of the Mortgagor, deliver and, if appropriate, to file with the appropriate filing officer or office such security agreements, financing statements and comparable instruments as the Mortgagee may require in order to impose, perfect or more effectively evidence the lien or security interest hereby created. In addition to any other rights and remedies provided herein or by law, the Mortgagee shall be entitled to pursue any and all remedies of a secured party under the Uniform Commercial Code and other applicable statutes of the place or places where the Mortgaged Property is located, it being hereby agreed that ten (10) days' notice as to the time and place of any sale shall be reasonable.

43.    INTENTIONALLY DELETED.

44.    That no extension of the time or modification of the terms of payment of the Promissory Note by the Borrower and no release of any part or parts of the Mortgaged Property by the Mortgagee shall release, relieve or discharge the Mortgagor from this Mortgage. Any acceptance by the Mortgagee of late or part payment of any installment of principal or interest, or both, or of late or part performance of any covenant or delay by the Mortgagee for any period of time in exercising the option to mature the entire debt secured hereby shall not operate as a waiver or forfeiture of the right to exercise such option to mature the entire debt secured hereby.    THE MORTGAGOR ACKNOWLEDGES THAT THE FOREGOING MAY RESULT IN A MODIFICATION OF THE COMMON LAW RULES OF WAIVER AND ESTOPPEL.    THE MORTGAGOR AFFIRMATIVELY STATES THAT SUCH MODIFICATION IS INTENDED, IT BEING IN THE BEST INTEREST OF THE MORTGAGOR TO PERMIT THE MORTGAGEE FLEXIBILITY IN RESPONDING TO VARIOUS SITUATIONS.    As an example, it is to the Mortgagor's benefit that the Mortgagee not be obligated to accelerate the obligations of the Borrower secured hereby where the Borrower fails to make a payment when it is due; rather the Mortgagee may permit said late payment without prejudicing the Mortgagee's rights hereunder.

45.    INTENTIONALLY DELETED.

46.    The Mortgagor expressly represents to the Mortgagee that the Property and the improvements thereon will not in the future be used for the handling, storage, transportation    or disposal of hazardous or toxic materials. The Mortgagor agrees to indemnify, defend and hold the Mortgagee harmless from and against any loss, cost or expense incurred by the Mortgagee, including without limitation attorney's fees at both trial and appellate levels, incurred by the Mortgagee as a result of such past, present or future use, handling, storage, transportation or disposal of hazardous or toxic materials.

47.    INTENTIONALLY DELETED

48.    The Mortgagor expressly represents to the Mortgagee that there will not be in

14

CFN: 20190157334 BOOK 31360 PAGE 4938

the future, asbestos insulation in the improvements to the real property encumbered by this Mortgage. The Mortgagor agrees to indemnify, defend and hold the Mortgagee harmless from and against any loss, cost or expense incurred by the Mortgagee, including without limitation attorneys' fees at both trial and appellate levels, incurred by the Mortgagee as a result of such present or future existence of asbestos insulation.

49. If at any time the State of Florida shall determine that the Intangible Tax paid in connection with this Mortgage is insufficient and/or that the Documentary Stamps affixed to the Note or hereto are insufficient and that additional Intangible tax should be paid and/or that additional Documentary Stamps should hereafter be affixed, the Mortgagor shall pay for the same, together with any interest or penalties imposed in connection with such determination, and the amount of money needed to pay for such tax stamps and penalties shall, until such tax is paid and stamps are purchased and affixed by Mortgagor, be a portion of the indebtedness secured by this Mortgage and bear interest from the date of such payment by Mortgagee, if Mortgagee elects to pay same, at the highest lawful rate.

50. U.S.A. Patriot Act.

(a) Mortgagor hereby represents and warrants to, and covenants with, Mortgagee that as of the date hereof and until such time as the Obligations shall be paid in full:

(i) None of the entities comprising Mortgagor, Borrower or Guarantor, any of its direct or indirect constituents or affiliates, or any of their respective officers or directors (including officers or directors of any such constituents or affiliates), and, to Mortgagor's knowledge, any of their respective brokers, investors or other agents acting or benefiting in any capacity in connection with the Loan, is a Prohibited Person (as defined below);

(ii) None of the entities comprising Mortgagor, Borrower, Guarantor, or any of its direct or indirect constituents or affiliates, any of their respective officers or directors (including officers or directors of any such constituents or affiliates) (A) to Mortgagor's knowledge, has conducted or will conduct any business or has engaged or will engage in any transaction or dealing with any Prohibited Person, including making or receiving any contribution of funds, goods or services to or for the benefit of any Prohibited Person; (B) to Mortgagor's knowledge, has dealt or will deal in, or otherwise has engaged or will engage in any transaction relating to, any property or interests in property blocked pursuant to the Executive Order (as defined below); or (C) has engaged or will engage in or has conspired or will conspire to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the requirements or prohibitions set forth in the Executive Order or the Patriot Act (as defined below);

(iii) To Mortgagor's knowledge, none of the brokers, investors or other agents for any entity comprising Mortgagor, Borrower, Guarantor, or any indemnitor or principal under the Loan Documents acting in any capacity in connection with the Loan (A) has conducted or will conduct any business or has engaged or will engage in any transaction or dealing with any Prohibited Person, including making or receiving any contribution of

15

CFN: 20190157334 BOOK 31360 PAGE 4939

funds, goods or services to or for the benefit of any Prohibited Person, (B) has dealt or will deal in, or otherwise has engaged or will engage in any transaction relating to, any property or interests in property blocked pursuant to the Executive Order; or (C) has engaged or will engage in or has conspired or will conspire to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the requirements or prohibitions set forth in the Executive Order or the Patriot Act;

        a.      Mortgagor covenants and agrees to deliver to Mortgagee any certification or other evidence requested from time to time by Mortgagee, confirming Mortgagor's compliance with this Section;

        b.      Mortgagor represents and warrants that to its knowledge Mortgagor, Borrower, Guarantor, and all of their respective affiliates (including any officers and directors of any of the foregoing) are in full compliance with all applicable orders, rules and regulations issued by, and recommendations of, the U.S. Department of the Treasury and OFAC (as defined below) pursuant to IEEPA (as defined below), the Patriot Act, other legal requirements relating to money laundering or terrorism and any executive orders related thereto;

        c.      At all times throughout the term of the Loan, Mortgagor, and all of its respective affiliates (including any officers and directors of any of the foregoing) shall be in full compliance with all applicable orders, rules and regulations issued by, and recommendations of, the U.S. Department of the Treasury and OFAC pursuant to IEEPA, the Patriot Act, other legal requirements relating to money laundering or terrorism and any executive orders related thereto;

        d.      Mortgagor does not believe, and has no reason to believe, that any of its investors is a "Prohibited Foreign Shell Bank" (as defined in the Patriot Act), or is named on any available lists of known or suspected terrorists, terrorist organizations or of other sanctioned persons issued by the United States government and/or the government(s) of any jurisdiction(s) in which Mortgagor is doing business.

        e.      Mortgagor covenants that it will adopt appropriate policies, procedures and internal controls to be fully compliant with any additional laws, rules or regulations relating to money laundering and/or terrorism, including the Patriot Act, to which it may become subject;

        f.      Mortgagor does not believe, and has no reason to believe, that the person or entity from whom Mortgagor acquired the Mortgaged Property is a Prohibited Foreign Shell Bank, or is named on any available lists of known or suspected terrorists, terrorist organizations or of other sanctioned persons issued by the United States government and/or the government(s) of any jurisdiction(s) in which Mortgagor is doing business;

        g.      Mortgagor will advise Mortgagee immediately of any material change that would affect the representations, covenants and warranties provided in this Section.

        (b)      For purposes hereof, "IEEPA" means the International Emergency

16

CFN: 20190157334 BOOK 31360 PAGE 4940

Economic Power Act, 50 U.S.C. Section 1701 et. seq.  "OFAC" means the U.S. Department of Treasury's Office of Foreign Asset Control.  "Patriot Act" means the Uniting  and Strengthening  America  by  Providing  Appropriate  Tools  Required  to Intercept  and Obstruct Terrorism Act of 2001 (Public Law 107-56) (The USA Patriot Act).  "Prohibited Person" means any Person: (i) listed in the Annex to, or is otherwise subject to the provisions of, the Executive Order No. 13224 on Terrorist Financing, effective  September  24,  2001, and  relating  to  Blocking  Property  and  Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism (the "Executive Order"); (ii) that is owned or controlled by, or acting for or on behalf of, any person or entity that is listed in the Annex to, or is otherwise subject to the provisions of the Executive Order; (iii) with whom Mortgagee is prohibited from dealing or otherwise engaging in any transaction by any terrorism or money laundering legal requirements, including the Patriot Act and  the Executive  Order;  (iv)  that  commits,  threatens  or  conspires  to  commit  or  supports "terrorism" as defined in the Executive Order; (v) that is named as a "specifically designated national (SDN)" on the most current list published by the U.S. Treasury Department Office of Foreign Assets Control at  its  official  website,  http://www.treas.gov.ofac/t11sdn.pdf or  at  any  replacement website or other replacement official publication of such list or is named on any other U.S. or foreign government or regulatory list issued post-09/11/01; (vi) that is covered by IEEPA, OFAC or any other law, regulation or executive order relating to  the imposition of economic sanctions against any country, region or individual pursuant to United States law or United Nations resolution; or (vii) that is an affiliate (including any principal, officer, immediate family member  or  close associate) of a person or entity described in one or more of clauses (i) – (vi) of this definition of Prohibited Person.

51.    MORTGAGOR    AND    MORTGAGEE    HEREBY    KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY AND ALL RIGHT THEY MAY HAVE TO A TRIAL BY JURY IN RESPECT TO ANY LITIGATION (INCLUDING BUT NOT LIMITED TO, ANY CLAIMS, CROSS CLAIMS OR THIRD PARTY CLAIMS ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS MORTGAGE, THE OTHER LOAN DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED HEREIN.   MORTGAGOR HEREBY CERTIFIES THAT NO REPRESENTATIVE OR AGENT OF THE MORTGAGEE NOR THE MORTGAGEE'S COUNSEL HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE MORTGAGEE WOULD NOT, IN THE EVENT OF SUCH LITIGATION, SEEK TO ENFORCE THIS WAIVER OF RIGHT TO JURY TRIAL  PROVISION.  MORTGAGOR ACKNOWLEDGES THAT   THE MORTGAGEE HAS BEEN INDUCED TO ENTER INTO  THIS  LOAN,  INCLUDING  THIS  MORTGAGE,  BY,  INTER  ALIA,  THE PROVISIONS OF THIS PARAGRAPH.

[SIGNATURE PAGE TO FOLLOW]

17

CFN: 20190157334 BOOK 31360 PAGE 4941

IN WITNESS WHEREOF, this Mortgage has been executed as of the day and year first above written.

Signed, sealed and delivered
in the presence of:

274 ATLANTIC ISLES LLC,
a Delaware limited liability company

_____
Witness Signs

_Eric R. Schwartz_
Witness Prints Name

By: _____
     ISAAC HALWANI, Managing Member

_____
Witness Signs

_CLARENCE BARTLETT_
Witness Prints Name

STATE OF FLORIDA

COUNTY OF BROWARD

The foregoing instrument was acknowledged before me this 4ᵗʰ day of March, 2019, by ISAAC HALWANI, as the Managing Member of 274 ATLANTIC ISLES LLC, a Delaware limited liability company, who is [ ] personally known to me or [✓] has produced _FL Driver License_ as identification.

My Commission Expires: 12/14/2021

_____
Notary Public



18

## MODIFIED AND CONSOLIDATED PROMISSORY NOTE

$2,000,001.00

FORT LAUDERDALE, FLORIDA
September 29, 2020

FOR VALUE RECEIVED, the undersigned, TCB & GSD CONSULTING LLC, a Florida limited liability company, whose post office addresses is 16565 N.W. 15th Ave., Miami, FL 33169, hereinafter the "Maker," promises to pay to the order of Eric R. Schwartz, as Trustee UTA dated March 4, 2019, whose post office address is 2412 Barcelona Drive, Fort Lauderdale, FL 33301, hereinafter the "Lender" the principal sum of Two Million and One Dollar ($2,000,001.00) together with interest thereon from the date of this Note at the initial rate of twenty four percent (24.00%) per annum, both principal and interest being payable in Lawful Money of the United States, such principal sum and interest payable as follows:

> Consecutive monthly installments of interest only on the principal balance outstanding from time to time commencing on October 29, 2020, and on the 29th day of each and every consecutive month thereafter, except for the month of February when it shall be due on the 28th day of said month; on April 7, 2025, the remaining unpaid principal amount and accrued interest shall be due and payable in full.

**MAKER AGREES THAT A PRINCIPAL PREPAYMENT OF FIVE HUNDRED THOUSAND AND ONE DOLLAR ($500,001.00) SHALL BE DUE AND PAYABLE ON OR BEFORE MARCH 29, 2021, AND UPON SUCH MANDATORY PREPAYMENT PAYMENT THE INTEREST RATE DUE UNDER THIS NOTE SHALL BE REDUCED TO 13.60% PER ANNUM ON THE REMAINING OUTSTANDING PRINCIPAL BALANCE. A FAILURE TO TIMELY MAKE SAID PRINCIPAL PREPAYMENT SHALL CONSTITUTE A DEFAULT UNDER THE TERMS OF THIS NOTE.**


Initials

In the event that any payment is returned on account of insufficient or uncollected funds, maker shall additionally be liable for a return check charge of $100.00 and the Lender may require that all future payments be made by cashier's check, money order or Federal Reserve wire transfer. Maker hereby understands and acknowledges that all charges and fees referred to in this paragraph arise out of and are intended to off-set predictable administrative costs and expenses which Lender shall suffer in the event of such delinquencies or returned checks; and such charges and fees shall not be deemed or construed to represent interest or penalties. Lender shall have no responsibility or liability for payments purportedly made hereunder but not actually received by Lender; and Borrower shall not be discharged from the obligation to make such payments due to loss of same in the mails or due to any other excuse or justification ultimately involving facts where such payments were not actually received by Lender.

The term "Loan Documents" as used herein shall mean any and all of the documents heretofore, now, or hereafter executed by maker, by others or by maker and others which wholly or partly secure or were, are, or will be executed in connection with the indebtedness evidenced

Page 1 of 4 – Promissory Note

EXHIBIT E

Initials

by this Promissory Note, including, but not limited to, the Mortgage and Security Agreement, Loan Agreement, Assignment of Rents, Leases, and Profits, UCC 1 Financing Statements, Agreement for Modification of Promissory Note and Mortgage and Security Agreement, Future Advance Receipt and Modification of Promissory Note and Mortgage and Security Agreement and associated Affidavits, disclosures and miscellaneous loan documentation (the "loan documents").

The Maker and endorsers of this note further agree to waive demand, notice of non payment and protest, and in the event suit shall be brought for the collection hereof, or the same has to be collected upon demand of an attorney, to pay reasonable attorney's fees for making such collection. This Promissory Note shall be in default in the event all payments, including installment payments and payment of principal are not made in clear funds by 2:00 P.M. on the date upon which they are due. The principal sum upon default or acceleration, shall bear interest at the maximum rate of interest permitted by law from its due date, maturity, default, or post judgment until paid.   In the event of default, the post judgment rate of interest will be equal to the default interest set forth herein and not the statutory post-judgment rate of interest.   The prepayment charge as set forth in this Note shall apply in the event that a default under the terms and conditions of this   Note results in the   acceleration of the   principal sum due hereunder, and the payee shall be entitled to recover the prepayment charge in addition to default interest as provided herein. This note is secured by a mortgage of even date herewith and is to be construed and enforced according to the laws of the State of Florida. Upon default in the payment of principal and/or interest when due, the whole sum of principal and interest remaining unpaid shall, at the option of the holders, become immediately due and payable. Failure to exercise this option shall not constitute a waiver of the right to exercise the same in the event of a subsequent default.

The Maker, and any endorsers, sureties, guarantors and all others who are, or who may become liable for the payment hereof, severally, irrevocably, and unconditionally (a) Agree that any suit, action, or other legal proceeding arising out of or relating to this Promissory Note may be brought, at the option of the Lender, in a court of record of the State of Florida in Miami Dade County, or in any other court of competent jurisdiction; (b) Consent to the jurisdiction of each such Court in any such suit, action or proceeding; and (c) Waive any objection which it or they may have to the laying of venue of any such suit, action or proceeding in any such Courts.

Upon the happening of any of the following events, each of which shall constitute a "default" hereunder, all sums due hereunder shall thereupon or thereafter, at Lender's option, become immediately due and payable; (a) Failure of obligor (which term shall mean and include each maker, endorser, surety, guarantor or other party liable for payment of or pledging collateral or security under this Note) to pay in full and with clear funds on or before the due date, any sum due hereunder or due by any obligor to Lender under any other Promissory Note or under any security instrument or written obligation of any kind now existing or hereafter created; (b) Occurrence of default under any of the Loan Documents or any other loan agreement or security instrument now or hereafter in effect which by its terms covers this Promissory Note or the indebtedness evidenced thereby which default remains uncured;   (c) filing of any petition under the Bankruptcy Code or any similar federal or state statute by or against any obligor or the insolvency of any obligor; (d) making of a general assignment by any obligor for the benefit of creditors, appointment of or taking possession by a receiver, trustee or custodian or similar official for any obligor or for any assets of any such obligor or institution by or against

Page 2 of 4 – Promissory Note


Initials

any obligor of any kind of insolvency proceedings or any proceeding for dissolution or liquidation of any obligor which is not dismissed within any proceeding for dissolution or liquidation of any obligor which is not dismissed within thirty (30) days of the filing thereof; (d) Entry of a final judgment against any obligor which is not satisfied or transferred to bond within thirty (30) days of the date of entry; (e) material falsity in any certificate, statement, representation, warranty or audit at any time furnished to Lender or on behalf of any obligor pursuant to or in connection with this Promissory Note, the Loan Documents or any loan agreement or security agreements now or hereafter in effect, which by its terms covers this Promissory Note for the indebtedness evidenced hereby or otherwise including any omission to disclose any substantial contingent or liquidated liabilities or any material adverse change in any facts disclosed by any certificate, statement, representation, warranty or audit furnished to Lender; (f) Issuance of any writ or attachment or writ of garnishment or filing of any lien against any collateral or the property of any obligor which is not dismissed within thirty (30) days of the date of issuance or filing, whichever is applicable; (g) Taking of possession of any material collateral or of any substantial part of the property of any obligor at the instance of any governmental authority; (h) Dissolution, merger, consolidation, or reorganization of any obligor; (i) Assignment or sale by any obligor of any equity in any collateral secured by this Promissory Note without the prior written consent of Lender; or (j) Cancellation of any guaranty with respect hereto without the prior written consent of bank hereof; or (k) Occurrence of any default under any of the Loan Documents or obligation of Maker or of any obligor to Lender.

Lender shall have all of the rights and remedies of a creditor, mortgagee and secured party under all applicable law. Without limiting the generality of the foregoing, upon the occurrence of any default, as defined hereinabove, Lender may, at its option, and without notice or demand (i) declare the entire unpaid principal and accrued interest accelerated and due and payable at once, together with any and all other liabilities of maker or any of such liabilities selected by Lender; and (ii) setoff against this Promissory Note all monies owed by Lender in any capacity to maker, whether or not due and also setoff against all other liabilities of maker to Lender all monies owed by Lender in any capacity to maker, and Lender shall be deemed to have exercised such right of setoff, and to have made a charge against any such money immediately upon the occurrence of such default, although made or entered on the books subsequent thereto. To the extent that any of the collateral is personal property and Lender elects to proceed with respect to it in accordance with the Uniform Commercial Code then, unless that collateral is perishable or threatens to decline speedily in value, or is of a type customarily sold on a recognized market, Lender will give maker reasonable notice of the time and place of any public or private sale thereof. The requirement of reasonable notice shall be met if such notice is, at the option of Lender, hand delivered, sent via expedited courier, or mailed, postage prepaid to maker, at the address given to Lender by Maker, or any other address shown on the records of Lender at least ten (10) days before the time of sale. Upon disposition of any collateral after the occurrence of any default hereunder, maker shall be and shall remain liable for any deficiency; and Lender shall account to maker for any surplus, but Lender shall have the right to apply all or part of such surplus (or to hold the same as reserve) against any and all other liabilities of Maker to Lender.

If the calculation of interest or the imposition of a change in the rate of interest after acceleration upon default or the payment of any fees or other charges which are construed to be interest under applicable law, rule, or regulation in effect from time to time, result in an effective rate of interest higher than that permitted to be paid under applicable law, rule, or regulation in effect from time to time, then such charges shall be reduced by a sum sufficient to result in an

Page 3 of 4  Promissory Note

Initials

effective rate of interest no greater than the maximum effective rate of interest to be paid under applicable law, rule or regulation in effect from time to time. Upon maturity of this Note, whether by acceleration or in due course, interest shall be recalculated over the actual life of the loan, based upon the amounts outstanding, and if the total amount of interest theretofore paid exceeds the amount permitted to paid under applicable law, rule or regulation in effect from time to time, the excess shall be credited to principal, or if such excess exceeds the principal amount due hereunder, refunded to Maker.

AS A MATERIAL FACTOR IN INDUCING LENDER TO MAKE THE LOAN EVIDENCED BY THIS NOTE AND ACCEPT THE MORTGAGE AND SECURITY AGREEMENT AND OTHER LOAN INSTRUMENTS, MAKER AND ITS SUCCESSORS AND ASSIGNS, AGREE THAT ANY LITIGATION ARISING OUT OF OR INSTITUTED BY PAYEE OR ITS SUCCESSORS AND ASSIGNS TO ENFORCE ANY OF THE TERMS OF THIS PROMISSORY NOTE SHALL BE TRIED WITHOUT JURY, AND NO JURY TRIAL SHALL BE SOUGHT OR MAINTAINED BY MAKER, ANY GUARANTOR, OR THEIR RESPECTIVE SUCCESSORS AND ASSIGNS, IN ANY LAWSUIT, PROCEEDING, COUNTERCLAIM, OR ANY OTHER LITIGATION PROCEDURE BASED UPON, OR ARISING OUT OF, THE LOAN EVIDENCED BY THE MORTGAGE NOTE, THE MORTGAGE DEED AND OTHER LOAN DOCUMENTS, ANY COLLATERAL OR THE DEALINGS OR THE RELATIONSHIP AMONG MAKER, LENDER AND GUARANTOR, IF ANY.

THIS NOTE MODIFIES, CONSOLIDATES AND IS A SUBSTITUTE FOR THE ORIGINAL PROMISSORY NOTE DATED MARCH 7, 2019, AND THE FUTURE ADVANCE PROMISSORY NOTE OF EVEN DATE HEREWITH.

TCB & GSD CONSULTING LLC,
a Florida limited liability company

By: _____
ISAAC HALWANI, Manager

Payable At:
2412 Barcelona Drive
Fort Lauderdale, FL 33301
or such other place as designated by Lender

Page 4 of 4 – Modified and Consolidated Promissory Note

## SECOND AMENDED CONTINUING GUARANTY

For value received, the sufficiency of which is hereby acknowledged, and in consideration of any loan or other financial accommodation heretofore or hereafter at any time made or granted to by TCB & GSD CONSULTING LLC, a Florida limited liability company, whose post office address is 16565 N.W. 15th Ave., Miami, FL 33169, herein the "Borrower," by Eric R. Schwartz, as Trustee UTA dated March 4, 2019, whose post office address is 2412 Barcelona Drive, Fort Lauderdale, FL 33301, together with its successors and assigns, herein called "Lender," and 274 ATLANTIC ISLES LLC, a Delaware limited liability company, ISAAC HALWANI and GISELLE HALWANI, herein collectively called the "Undersigned" agree that:

1.      Undersigned hereby jointly and severally unconditionally guaranty the full and prompt payment when due, whether by acceleration or otherwise, and at all times hereafter, of: (a) the Promissory Note dated March 7, 2019 secured by a mortgage on real estate in Miami-Dade County, Florida, in the principal amount of One Million Five Hundred Thousand and No/100 Dollars ($1,500,000.00), as modified by that certain Agreement for Modification of Promissory Note and Mortgage and Security Agreement dated effective April 7, 2020 (the "Modification"), and that certain Modified and Consolidated Promissory Note of even date herewith in the principal amount of Two Million and One Dollar ($2,000,001.00) executed by Borrower payable to the order of Lender; (b) any and all further extensions or renewals of said notes, and all expenses, including attorneys' fees, incurred in the collection thereof, the enforcement of rights under any security therefore and the enforcement hereof; and (c) any indebtedness resulting from advance made on Borrower's behalf by Lender to protect or preserve the priority and security of its first lien (all the foregoing items, (a), (b) and (c), being hereinafter called the "Liabilities").

2.      Undersigned further jointly and severally unconditionally guaranty the faithful, prompt and complete compliance by Borrower with all terms and conditions of the Promissory Note, the Mortgage and Security Agreement, Modification, and Modified and Consolidated Promissory Note and all other instruments executed in connection therewith securing payment of the Liabilities and all other agreements, documents and instruments securing payment of the Liabilities or related thereto (such Promissory Note, Mortgage Security Agreement, Modification, and Modified and Consolidated Promissory Note and all other instruments executed in connection therewith and collectively referred to hereinafter as the "Modified Loan Documents") and the payment of all costs, expenses, charges and other expenditures required to be made by Borrower, or which Borrower agrees to make, under the terms and provisions of any of the Modified Loan Document.

3.      That except as expressly modified herein, all the terms, provisions, and covenants of each of the undersigned's Continuing Guaranty dated March 7, 2019, and Amended Continuing Guaranty dated effective April 7, 2020, and this Second Amended Continuing Guaranty hereinafter the collectively as the "Guaranty", shall remain in full force and effect.

Page 1 of 3 – Amended Continuing Guaranty

EXHIBIT F

4.     The Undersigned acknowledge and agree that each has no have no claim, setoff or defense to the enforcement of the Modified Loan Documents or the Guaranty.

5.     This Agreement shall be construed in accordance with the laws of the State of Florida, and such laws shall govern the interpretation, construction, and enforcement hereof.

6.     THE UNDERSIGNNED HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY AND ALL RIGHT THEY MAY HAVE TO A TRIAL BY JURY IN RESPECT TO ANY LITIGATION (INCLUDING BUT NOT LIMITED TO, ANY CLAIMS, CROSS CLAIMS OR THIRD PARTY CLAIMS ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AMENDED CONTINUING GUARANTY OR ANY OF THE MODIFIED LOAN DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED HEREIN. THE UNDERSIGNED HEREBY CERTIFY THAT NO REPRESENTATIVE OR AGENT OF THE LENDER NOR THE LENDER'S COUNSEL HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE LENDER WOULD NOT, IN THE EVENT OF SUCH LITIGATION, SEEK TO ENFORCE THIS WAIVER OF RIGHT TO JURY TRIAL PROVISION. THE UNDERSIGNED ACKNOWLEDGE THAT THE LENDER HAS BEEN INDUCED TO ENTER INTO THE MODIFIED LOAN DOCUMENTS FOR WHICH THIS AGREEMENT APPLIES, INCLUDING THIS AGREEMENT, BY, INTER ALIA, THE PROVISIONS OF THIS PARAGRAPH.

Signed, sealed and delivered as of September 29, 20220.

In the presence of:

_____
Witness Signs

Eduardo Yance.
_____
Witness Prints Name

274 ATLANTIC ISLES LLC,
a Delaware limited liability company

By: _____

ISAAC HALWANI, Managing Member

STATE OF FLORIDA
COUNTY OF BROWARD

The foregoing Amended Continuing Guaranty was acknowledged before me before me by means of [ X ] physical presence or [___] online notarization this 28 day of September, 2020, by ISAAC HALWANI, as the Managing Member of 274 ATLANTIC ISLES LLC, a Delaware limited liability company, who is [ X ] personally known to me or who has [___] produced a Driver's License as identification

My Commission Expires:

JOSE G FEREIRA
MY COMMISSION # GG105629
EXPIRES May 17, 2021

_____
Notary Public

Page 2 of 3 – Amended Continuing Guaranty

Witness Signs

Eduardo Yanec
Witness Prints Name

Witness Signs

Eduardo Yanec
Witness Prints Name

ISAAC HALWANI

GISELLE HALWANI

STATE OF FLORIDA

COUNTY OF BROWARD

The foregoing Amended Continuing Guaranty was acknowledged before me by means of [X] physical presence or [___] online notarization this 28 day of September, 2020, by ISAAC HALWAN and GISELLE HALWANI, who are [X] personally known to me or who have [___] produced Driver's Licenses as identification.

My Commission Expires:

_____
Notary Public

JOSE G FEREIRA
MY COMMISSION # GG105629
EXPIRES May 17, 2021

Page 3 of 3 – Amended Continuing Guaranty

CFN: 20200564297 BOOK 32128 PAGE 4624
DATE:10/06/2020 08:10:38 AM
MTG DOC 1,753.50
INTANGIBLE 1,002.00
HARVEY RUVIN, CLERK OF COURT, MIA-DADE CTY

This Instrument Prepared
By and Return To:
Eric R. Schwartz, Esquire
Weitz & Schwartz, P. A.
900 S. E. 3rd Avenue, #204
Ft. Lauderdale, FL 33316

FLORIDA DOCUMENTARY STAMP TAXES IN THE AMOUNT OF $5,250.00 AND INTANGIBLE TAXES IN THE AMOUNT OF $3,000.00 HAVE BEEN PAID IN CONNECTION WITH THE MORTGAGE AND SECURITY AGREEMENT RECORDED IN OFFICIAL RECORDS BOOK 31360, AT PAGE 4924, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA. FLORIDA DOCUMENTARY STAMP TAXES AND INTANGIBLE TAXES ARE NOW DUE ONLY WITH RESPECT TO THE AMOUNT OF $500,001.00 WHICH REPRESENTS A FUTURE ADVANCE BEING MADE OF EVEN DATE HEREWITH PURSUANT TO THE AFOREMENTIONED MORTGAGE AND ARE BEING PAID SIMULTANEOUSLY WITH THE RECORDING OF THIS FUTURE ADVANCE RECEIPT AND MODIFICATION OF PROMISSORY NOTE AND MORTGAGE.

### FUTURE ADVANCE RECEIPT AND MODIFICATION OF
### PROMISSORY NOTE AND MORTGAGE AND SECURITY AGREEMENT

This Future Advance Receipt and Modification of Promissory Note and Mortgage and Security Agreement ("Agreement") dated effective as of the 29th day of September, 2020, by and between TCB & GSD CONSULTING LLC, a Florida limited liability company, whose post office address is 16565 N.W. 15th Avenue, Miami, FL 33169 (the "Borrower"); 274 ATLANTIC ISLES LLC, a Delaware limited liability company, who post office address is 16565 N.W. 15th Avenue, Miami, FL 33169 (the "Mortgagor"), and ERIC R. SCHWARTZ, AS TRUSTEE UTA dated March 4, 2019, whose mailing address is 2412 Barcelona Drive, Fort Lauderdale FL 33301 (the "Lender").

### WITNESSETH:

WHEREAS, on March 7, 2019, Borrower executed and delivered to Lender a Promissory Note in the original principal sum of One Million Five Hundred Thousand and No/00 Dollars ($1,500,000.00), hereinafter referred to as "Note" secured by a Mortgage and Security Agreement executed by Mortgagor and dated March 7, 2019, hereinafter referred to as the "Mortgage", an Assignment of Leases, Rents and Profits dated March 7, 2019, hereinafter referred to as the "ALRP", and a UCC-1 Financing Statement, hereinafter referred to as the "UCC", each of the foregoing being recorded on March 12, 2019, in Official Records Book 31360, at Pages 4924, 4942, and 4947, respectively, each of the Public Records of Miami-Dade County, Florida, which Note, Mortgage, ALRP, and UCC are hereinafter collectively referred to as the "Loan Documents, which encumbered as a first mortgage the following described real property:

EXHIBIT G

CFN: 20200564297 BOOK 32128 PAGE 4625

Lots 101 and 102, ATLANTIC ISLAND, according to the Plat thereof recorded in Plat Book 34, Page 17 of the Public Records of Miami-Dade County, Florida, TOGETHER WITH a Propriety Interest in the South 40 feet of the North 59.67 feet of Lot 96, of TATUM'S OCEAN BEACH PARK, according to the Plat thereof recorded in Plat Book 5, Page 35 of the Public Records of Miami-Dade County, Florida, lying East of the East right-of-way line of the 100 foot right-of-way of State Road No. A1A recorded in Plat Book 46, Page 40 of the Public Records of Miami-Dade County, Florida, and

WHEREAS, the parties hereto entered into that certain Agreement for Modification of Promissory Note and Mortgage and Security Agreement effective April 7, 2020, and recorded on September 22, 2020, in Official Records Book 32110, Page 3390, of the Public Records of Miami-Dade County, Florida ("Modification"); and

WHEREAS, the Borrower and Mortgagor requested and Lender has to make a future advance to Mortgagor pursuant to the terms of Paragraph 35 of the Mortgage, thereby increasing the outstanding principal balance of the Loan Documents as amended by the Modification to Two Million One Dollar (U.S. $2,000,001.00) as more particularly provided herein, and the Lender has agreed subject to the terms of this Agreement.

NOW, THEREFORE, in consideration of the covenants herein provided and other good and valuable consideration, the receipt of which is hereby acknowledged, the parties agree as follows:

1.   The foregoing recitations are true and correct and are incorporated in this Agreement by reference.

2.   Borrower and Mortgagor hereby represent and warrant to Lender each of the following:

A.   Borrower and Mortgagor have all the necessary power and authority to execute this Agreement and to perform the transactions contemplated hereby;

B.   Neither the execution of this Agreement, nor the performance of Borrower and Mortgagor of their obligations hereunder require the consent, authorization or approval of, or the giving of notice to any federal, state, or local governmental authority or agency; or the consent or approval of any partner or creditor of Borrower or Mortgagor;

C.   There are no actions, suits or proceedings (including but not limited to any bankruptcy proceedings) pending or, to Borrower's or Mortgagor's knowledge, threatened against or affecting Borrower, Mortgagor or the Property which could materially affect the business of the Borrower or its financial ability to perform its obligations under the Loan Documents and this Agreement;

CFN: 20200564297 BOOK 32128 PAGE 4626

D.    The Property is free and clear of all liens, charges, or other monetary encumbrances except for the lien of the Loan Documents as amended by the Modification which remain as a first priority lien against the Property notwithstanding this Agreement, and that certain Second Mortgage in the original principal amount of $500,000.00, by virtue of that certain Mortgage and Security Agreement recorded on October 24, 2019, in Official Records Book 31661, Page 2766, in the Public Records of Miami-Dade County.

E.    None of the proceeds which the Borrower is to receive pursuant to the terms of the Loan Documents and this Agreement are to be used for personal, family or household purposes and are solely for the business purposes of the Borrower.

3.    In the event of any conflict or ambiguity between the terms and provisions of either or both this Agreement and any of the Loan Documents, the Modification and the terms of this Agreement shall control to the extent of such conflict or ambiguity.

4.    That the Loan Documents are hereby modified as follows:

A.    The Borrower hereby acknowledges and agrees that the current outstanding principal balance of the Original Note which is due and owing to Lender by Borrower is in the amount of One Million Five Hundred Thousand and No/100 Dollars ($1,500,000.00) and Borrower hereby acknowledges receipt of a Future Advance from Lender in the sum of Five Hundred Thousand and One Dollar ($500,001.00) as evidenced by that certain Future Advance Promissory Note of even date herewith, which Original Note and Future Advance Promissory Note shall be paid by Borrower to Lender in accordance with the terms of that certain Modified and Consolidated Promissory Note of even date herewith in the original principal amount of Two Million One Dollar ($2,000,001.00) (the "MCP Note");

B.    The interest rate due on the outstanding principal balance of amount of Two Million One Dollar ($2,000,001.00) is increased as set forth in the MCP Note;

5.    The Borrower and Mortgagor hereby acknowledge and agree that the Loan Documents, as modified herein, constitute a valid first lien on the Property.

6.    All references in the Loan Documents to the Original Note, the Mortgage, or any other loan document, including the Modification shall mean such Loan Document as the same may be amended by this Agreement. Except as set forth in this Agreement, the Loan Documents are un-amended and un-modified and the terms, provisions, and covenants of same are hereby ratified and affirmed, the Loan Documents shall remain in full force and effect in strict accordance with the terms thereof, and nothing herein contained shall affect or be construed to affect the lien, charge or encumbrance of the Security Instrument or the other Loan Documents, or the priority thereof over other liens, charges, encumbrances and conveyances, or to release or affect the liability or any party or parties who may now or hereafter be liable under or on account of the Loan Documents.

7.     As a material inducement to the Lender to consent to this Agreement, Borrower and Mortgagor knowingly and voluntarily acknowledge that they have no defenses to the enforcement of the Loan Documents, and further hereby acknowledge that they have no claims, counterclaims, offsets, setoffs, or defenses of any kind, to the enforcement of the aforesaid Loan Documents as amended by the Modification and this Agreement.

8.     That this Agreement, and the interpretation and enforcement thereof, shall be governed by the laws of the State of Florida.

9.     AS A MATERIAL FACTOR IN INDUCING LENDER TO ENTER INTO THIS AGREEMENT, BORROWER AND MORTGAGOR, FOR THEMSELVES AND THEIR SUCCESSORS AND ASSIGNS, AGREE THAT ANY LITIGATION ARISING OUT OF THIS AGREEMENT OR INSTITUTED BY ANY PARTY IN INTEREST TO ENFORCE ANY OF THE TERMS OF THIS AGREEMENT, OR ANY LOAN DOCUMENTS, SHALL BE TRIED WITHOUT JURY, AND NO JURY TRIAL SHALL BE SOUGHT OR MAINTAINED BY BORROWER OR MORTGAGOR, OR THEIR SUCCESSORS AND ASSIGNS, IN ANY LAWSUIT, PROCEEDING, COUNTERCLAIM, OR ANY OTHER LITIGATION PROCEDURE BASED UPON, OR ARISING OUT OF, THE LOAN EVIDENCED BY THE LOAN DOCUMENTS, THIS AGREEMENT, ANY COLLATERAL OR THE DEALINGS OR THE RELATIONSHIP AMONG BORROWER, MORTGAGOR AND LENDER.

IN WITNESS WHEREOF, Borrower has executed this Future Advance Receipt and Modification of Mortgage Agreement the day and year first above written.

IN WITNESS WHEREOF, Borrower has executed this Agreement effective as of the date set forth below.

Witness Signs

Edardo Vance
Witness Prints Name

TCB & GSD CONSULTING LLC,
a Florida limited liability company

By: _____

ISAAC HALWANI, as Manager

STATE OF FLORIDA
COUNTY OF BROWARD

The foregoing instrument was acknowledged before me before me by means of [ X ] physical presence or [___] online notarization this 28 day of September, 2020, by ISAAC HALWANI, as the Manager of TCB & GSD CONSULTING LLC, a Florida limited liability company, who is [ X ] personally known to me or who has [___] produced a Driver's License as identification

My Commission Expires:

Notary Public

JOSE G FEREIRA
MY COMMISSION # GG105629
EXPIRES May 17, 2021

Page 4 of 6
File 20-26364

CFN: 20200564297 BOOK 32128 PAGE 4628

IN WITNESS WHEREOF, Mortgagor has executed this Agreement effective as of the date set forth below.

Witness Signs

Witness Prints Name

274 ATLANTIC ISLES LLC,
a Delaware limited liability company

By:

ISAAC NALWANI, Managing Member

STATE OF FLORIDA

COUNTY OF BROWARD

The foregoing instrument was acknowledged before me before me by means of [ X ] physical presence or [___] online notarization this 28 day of September, 2020, by ISAAC HALWANI, as the Managing Member of 274 ATLANTIC ISLES LLC, a Delaware limited liability company, who is [ X ] personally known to me or who has [___] produced a Driver's License as identification

My Commission Expires:

Notary Public

JOSE G FEREIRA
MY COMMISSION # GG10562
EXPIRES May 17, 2021

Page 5 of 6
File 20-26364

CFN: 20200564297 BOOK 32128 PAGE 4629

IN WITNESS WHEREOF, Lender has executed this Agreement effective as of the date set forth below.

_____
Witness Signs

_____
Eric R. Schwartz, as Trustee UTA dated March 4, 2019

JANE SCHWARTZ
_____
Witness Prints Name

STATE OF FLORIDA

COUNTY OF BROWARD

The foregoing instrument was acknowledged before me before me by means of [ X ] physical presence or [___] online notarization this 29 day of September, 2020, by ERIC R. SCHWARTZ, as Trustee UTA dated March 4, 2019, who is [ X ] personally known to me or who has [___] produced a Driver's License as identification

My Commission Expires: 12/14/2021

_____
Notary Public

YAN YU WU
COMMISSION
Number
GG168350
EXPIRES
December 14, 2021
Bonded thru Aaron Notary
Notary Public, State of Florida

## FORBEARANCE AGREEMENT

This Forbearance Agreement (the "Agreement") is made and entered into effective December 18, 2020, by Eric R. Schwartz, as Trustee UTA dated March 4, 2019, whose mailing address is 2412 Barcelona Drive, Fort Lauderdale, FL 33301 (the "Lender"); TCB & GSD CONSULTING LLC, a Florida limited liability company, whose post office address is 16565 N.W. 15th Ave., Miami, FL 33169 (the "Borrower"); 274 ATLANTIC ISLES LLC, a Delaware limited liability company, who post office address is 16565 N.W. 15th Ave., Miami, FL 33169 (the "Mortgagor"),  and ISAAC HALWANI and GISELLE HALWANI, his wife, whose post office address is 3340 N.E. 190th St, Apt 907, Aventura, FL 33180 and 274 ATLANTIC ISLES LLC, a Delaware limited liability company (collectively the "Guarantor").

WHEREAS on March 7, 2019, Borrower executed and delivered to Lender a Promissory Note (the "Note") in the original principal amount of $1,500,000.00, which Note was guaranteed by Guarantor pursuant to the terms of a Continuing Guaranty dated March 7, 2019 (the "Guaranty"); and

WHEREAS on March 7, 2020, as security for the payment of the Note and the obligations of the Guaranty, Mortgagor executed and delivered to Lender a Mortgage and Security Agreement ("Mortgage") and recorded on March 12, 2019, in Official Records Book 31360, Page 4924, of the Public Records of Miami-Dade County, Florida; and

WHEREAS effective April 7, 2020, Borrower executed and delivered to Lender a Modified and Consolidated Promissory Note (the "Modified Note") in the original principal amount of $2,000,001.00, which Note was guaranteed by Guarantor pursuant to an Amended Continuing Guaranty dated March 7, 2019 (the "Amended Guaranty"); and

WHEREAS effective April 7, 2020, as security for the payment of the Modified Note and the obligations of the Amended Guaranty, Mortgagor executed and delivered to Lender an Agreement for Modification of Promissory Note and Mortgage and Security Agreement ("Modification") and recorded on September 22, 2020, in Official Records Book 32110, Page 3390, of the Public Records of Miami-Dade County; and

WHEREAS, the aforesaid Note, Mortgage, Guaranty, Modified Note, Amended Guaranty and Modification are hereinafter collectively referred to as the "Loan Documents;" and

WHEREAS, the Lender is the owner and holder of the Loan Documents; and

WHEREAS The legal description for the real property encumbered by the Loan Documents is described as follows:

Lots 101 and 102, ATLANTIC ISLAND, according to the Plat thereof recorded in Plat Book 34, Page 17 of the Public Records of Miami-Dade County, Florida, TOGETHER WITH a Propriety Interest in the South 40 feet of the North 59.67 feet of Lot 96, of TATUM'S OCEAN BEACH PARK, according to the Plat thereof recorded in Plat Book 5, Page 35 of the Public Records of Miami-Dade County, Florida, lying East of the East right-of-way line of the 100 foot right-of-way of State Road No. A1A recorded in Plat Book 46, Page 40 of the Public Records of Miami-Dade County, Florida..

1

EXHIBIT H

(hereinafter referred to as the "Property")

WHEREAS Borrower and Guarantor defaulted under the terms of the Loan Documents by failing to pay the installment due under the Modified Note on November 7, 2020, and each payment due thereafter; and

WHEREAS Lender has advised Borrower and Guarantor of its intention to file a foreclosure action in the Circuit Court of Miami-Dade County Florida, (the "Foreclosure Action") but Borrower and Guarantor have requested that Lender forbear from filing the Foreclosure Action to give Borrower and Guarantor additional time to cure said default and bring the obligations of the Loan Documents, including all default interest, advances, costs and fees, current.

NOW THEREFORE, in consideration of the facts, acknowledgements, agreements, and promised contained in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which is acknowledged by each party hereto, the Parties promise and agree as follows:

1. The foregoing recitals are true and correct and are hereby incorporated into this Agreement.

2. Borrower and Guarantor acknowledge and agree that they are in default under the terms of the Loan Documents, and the amounts that are currently due and owing in order to cure the default as of December 18, 2020, is $57,651.80 calculated as the sum of the following:

   | | |
   |---|---|
   | Interest Due on Principal which accrues at $1,369.86/diem : | $54,401.80 |
   | Accrued legal fees and costs: | 3,250.00 |

3. Borrower and Guarantor acknowledge and agree that Lender shall advance the amount due for real estate taxes on the Property due under Folio 31-2214-003-0760, and that said advance shall accrue interest at the default rate as set forth in the Loan Documents and shall be due in addition to the amount set forth in Paragraph 2 above in order to cure the default.

4. Borrower and Guarantor further acknowledge and agree that they have no defenses, claims or causes of action against Lender arising out of the indebtedness under the Loan Documents and hereby expressly waive any right to raise any defenses or claims in the event of the filing of the Foreclosure Action by Lender.

5. Subject to the terms of this Agreement, Lender has agreed to forbear from the filing of the Foreclosure Action and to give Borrower and Guarantor until March 7, 2021, to bring the obligations of the Loan Documents, including all default interest, advances, costs and fees, current, and until March 29, 2021, to make a principal paydown of $500,001.00.

2

6. Simultaneously with the execution of this Agreement, Mortgagor shall fully execute, including necessary witnesses and notarization, and deliver to the attorney for Lender, Weitz & Schwartz, P.A., a Deed in Lieu of Foreclosure ("Deed") in the form of the deed attached here to as Exhibit A. Failure to return the executed Deed in recordable form shall constitute a breach of this agreement.    Upon receipt of this executed Agreement and the Deed, Weitz & Schwartz, P.A. ("Escrow Agent") shall hold the Deed in escrow in accordance with the terms of this Agreement as hereinafter provided.

7. Other than delivery of the Deed referenced herein, Mortgagor shall not transfer, encumber or permit the Property to be occupied by any persons other than the individual Guarantor, and shall keep all maintenance due on the Property current.

8. In the event that Borrower and Guarantor shall timely bring the obligations due under the Loan Documents current as provided herein, time being of the essence, Escrow Agent shall void the Deed and return the original to Mortgagor whereupon this Agreement shall terminate, and Escrow Agent shall be relieved of all responsibilities hereunder.

9. In the event that Borrower and Guarantor shall fail to timely bring the obligations due under the Loan Documents current as provided by this Agreement Escrow Agent shall be entitled, without any further notice to Borrower and Guarantor other than an email confirmation to zucky88@icloud.com to cause the Deed to be recorded in the Public Records of Miami-Dade County, Florida, and Lender, the individual Guarantor shall vacate the Property and leave it in broom-swept condition (meaning that Property shall be left clean with all debris and personal property removed.    All fixtures, built-in appliances, and landscaping, shall remain with Property) and Lender  shall be entitled to take possession of the Property.

10. In the event that Mortgagor shall have breached this Agreement by causing the title delivered to Lender under the Deed to be subject to any claims or encumbrances other than the Loan Documents, or in the event that the individual Guarantor shall fail to vacate the Property then in such event Lender may, in its sole and unfettered discretion, proceed with the filing of the Foreclosure Action or such other legal action as is necessary to enforce the terms of this Agreement and Mortgagor shall remain fully liable under the Loan Documents notwithstanding the recording of the Deed, which by its terms shall not result in a merger of the mortgage interest held by Lender.

11. In the event Mortgagor, Borrower and or Guarantor files a proceeding under any Chapter of the U.S. Bankruptcy Code prior to Lender obtaining title and possession of the subject Property in the event of a default of this Agreement, each of the Mortgagor, Borrower and or Guarantor hereby irrevocably and unconditionally stipulate and agree that Lender shall be entitled to automatic stay relief in the Bankruptcy action.  This provision is a material inducement to the Lender to enter into this Agreement.

12. Escrow Agent acts hereunder solely as a depository and is not a party to or bound by any agreement or undertaking which may be evidenced by the loan documents. No liability shall be incurred by Escrow Agent in the event of any dispute or question as to the ultimate delivery of the escrow funds. In the event, however, that a dispute shall arise between any of the parties to this Escrow as to the proper disbursement of the deposit, the Escrow Agent may, at its option: (1) take no action and hold all funds (and documents, if any) until agreements reached between the disputing parties, or until a judgment has been entered by a court of competent jurisdiction and the appeal period has expired thereon, or if appealed then until the matter has been finally concluded, and then to act in accordance with such final judgment; or (2) institute an action for declaratory judgment, interpleader or otherwise joining all affected parties and thereafter complying with the ultimate judgment of the court with regard to the disbursement of the deposit and disposition of documents, if any. In the event of any suit between Borrower and Lender wherein the Escrow Agent is made a party by virtue of acting as such escrow agent hereunder, or in the event of any suit wherein Escrow Agent interpleads the subject matter of this escrow, or in the event the Escrow Agent is otherwise joined in any action by or between the parties, the Escrow Agent shall be entitled to recover all attorney's fees and costs incurred, including costs and attorney's fees for appellate proceeding, if any, said fees and costs are to be charged and assessed as court costs against the non-prevailing party or parties, jointly and severally. Notwithstanding anything to the contrary herewith, Escrow Agent shall have no duty to determine the performance or non-performance of any term or condition of the agreements between the parties hereto and the duties of the Escrow Agent are limited to those stated herein.

13. This Agreement shall be transferrable and remain binding and enforceable by any successors or assignees of Lender.

14. The provisions of this Agreement are severable, and the remaining portions and provisions shall remain enforceable even if any portion or provision of the Agreement is deemed to be invalid or unenforceable.

15. This Agreement may be executed in counterparts and delivered by .pdf or facsimile and all such counterparts shall constitute a single Agreement.

    IN WITNESS HEREOF, the Parties hereto have caused this document to be executed effective December 18, 2020.


**BORROWER:**

TCB & GSD CONSULTING LLC, a Florida limited liability company

By: _____

ISAAC HALWANI, as Manager

**LENDER:**

_____

ERIC R. SCHWARTZ, AS TRUSTEE UTA DATED MARCH 4, 2019

4

**GUARANTORS:**

_____
ISAAC HALWANI, Individually

_____
GISELLE HALWANI, Individually

**ESCROW AGENT:**

WEITZ & SCHWARTZ, P.A.

By: _____
ERIC R. SCHWARTZ, ESQ.

**MORTGAGOR and GUARANTOR:**

274 ATLANTIC ISLES LLC, a Delaware limited liability company

By: _____
ISAAC HALWANI, Managing Member

5

CFN: 20210231004 BOOK 32430 PAGE 4114
DATE:04/05/2021 01:08:21 PM
DEED DOC 12,000.60
HARVEY RUVIN, CLERK OF COURT, MIA DADE CTY

THIS INSTRUMENT PREPARED BY
AND RETURN TO:
ERIC R. SCHWARTZ, Esquire
WEITZ & SCHWARTZ, P. A.
900 S. E. 3rd Avenue, #204
Fort Lauderdale, FL 33316

## DEED IN LIEU OF FORECLOSURE

This Deed in Lieu of Foreclosure ("Deed") made effective the 18th day of December, 2020, between 274 ATLANTIC ISLES LLC, a Delaware limited liability company (hereinafter referred to as "party of the first part") whose post office address is 16565 N.W. 15th Ave., Miami, FL 33169, and ERIC R. SCHWARTZ, AS TRUSTEE UTA DATED MARCH 4, 2019, (hereinafter referred to as "party of the second part") reserving unto said Trustee or its successors, the power and authority to protect, conserve, sell, lease, encumber, or otherwise manage and dispose of the real property described herein unto said trustee whose address is 2412 Barcelona Drive, Fort Lauderdale, FL 33301.

### WITNESSETH:

WHEREAS, the party of the second part is the owner and holder of that certain Mortgage and Security Agreement ("Mortgage") dated March 7, 2019, and recorded on March 12, 2019, in Official Records Book 31360, Page 4924, as modified by that certain Agreement for Modification of Promissory Note and Mortgage and Security Agreement dated effective April 7, 2020, and recorded on September 22, 2020, in Official Records Book 32110, Page 3390, all of the Public Records of Miami-Dade County, Florida (hereinafter collectively referred to as the "Mortgage"); and

WHEREAS, the party of the first part is indebted to the party of the second part by virtue of its Continuing Guaranty dated March 7, 2019, and its Amended Continuing Guaranty dated effective April 7, 2020 (collectively the "Guaranties") as to that certain Promissory Note dated March 7, 2019, and that certain Modified and Consolidated Promissory Note dated September 29, 2020 (collectively the "Note") in the original principal amount of $2,000,001.00 which is secured by the aforesaid Mortgage, together with interest accrued to the date of this Deed in accordance with the terms of the Note, and that said party of the first part has requested that the party of the second part accept this Deed as an absolute conveyance of the hereinafter described real property in exchange for a covenant by the party of the second part not to sue the party of the first part under the aforesaid Guaranties; and

WHEREAS, it is further intended by the parties that this Deed in Lieu of Foreclosure is an absolute conveyance of the title in consideration of the cancellation of the party of the first part's personal liability for the debt secured by the Mortgage, and does not constitute additional security for any obligation arising between the parties and that the conveyance herein shall not result in any merger of title as it affects the interests of the party of the second part.

NOW, THEREFORE, in consideration of the covenants herein provided and other good and valuable consideration, receipt of which is hereby acknowledged, the party of the first part has granted, bargained and sold to the party of the second part, its successors and assigns forever, the following described land, to-wit;

Page 1 of 2 – Deed in Lieu
File no. 20-26414

EXHIBIT I

CFN: 20210231004 BOOK 32430 PAGE 4115

Lots 101 and 102, ATLANTIC ISLAND, according to the Plat thereof recorded in Plat Book 34, Page 17 of the Public Records of Miami-Dade County, Florida, TOGETHER WITH a Propriety Interest in the South 40 feet of the North 59.67 feet of Lot 96, of TATUM'S OCEAN BEACH PARK, according to the Plat thereof recorded in Plat Book 5, Page 35 of the Public Records of Miami-Dade County, Florida, lying East of the East right-of-way line of the 100 foot right-of-way of State Road No. A1A recorded in Plat Book 46, Page 40 of the Public Records of Miami-Dade County, Florida..

TO HAVE AND TO HOLD the same, unto said party of the second part in fee simple.

AND the party of the first part hereby covenants with the said party of the second part that, except as noted above, that at the time of delivery of the Deed, the premises were free from all encumbrances made by the party of the first part, and that they will warrant and defend the same against the lawful claims and demands of all persons claiming by, through or under them.

Signed, sealed and delivered
in the presence of:

Witness Signs

JOSE FERREIRA
Witness Prints Name

Gabriel Albelo
Witness Prints Name

274 ATLANTIC ISLES LLC,
a Delaware limited liability company

By: _____
ISAAC HALWANI, Managing Member

STATE OF FLORIDA

COUNTY OF BROWARD

The foregoing instrument was acknowledged before me this 29 day of December, 2020, by ISAAC HALWANI, as the Managing Member of 274 ATLANTIC ISLES LLC, a Delaware limited liability company, who is [ ] personally known to me or [✓] has produced Florida drivers lic. as identification.

My Commission Expires: 10/21/23      _____
                                      Notary Public



Notary Public State of Florida
Gabriel Albelo
My Commission GG 924478
Expires 10/21/2023



EXHIBIT J

# Vehicle Information Check

| Vehicle Information: | | | |
|---|---|---|---|
| Vehicle Identification Number: | WP0AF2A74HL152903 | Year/Make: | 2017 PORSCHE |
| Previous Title State: | FLORIDA | Registration Expiration Date: | 10/23/2022 |
| Title: | 129729616 | Title Issue Date: | 5/4/2021 |
| Title Status: | ACTIVE | Title Print Date: | 5/4/2021 |
| Odometer Reading/Status: | 19,020 ACTUAL MILEAGE | Odometer Date: | 5/3/2021 |
| Color: | GRAY | Vehicle Type: | AUTO |
| Net Weight: | 4,972 | Owner Information: | 1 owner |
| Paper Title | | Salvage: | |
| Brands: | | | |

| Lien Information |
|---|
| There is no lien on this vehicle. |

**If any of the information on this record needs to be corrected**, please contact your tax collector and complete appropriate paperwork to update the record.

**If you have lost or misplaced your title** and need to apply for a duplicate, click here for the form and instructions.



EXHIBIT K

**ERIC P. STEIN, P.A.**
ATTORNEYS AT LAW
1820 N.E. 163 STREET, SUITE 100
NORTH MIAMI BEACH, FL 33162
TEL: (786) 248-1000  FAX: (786) 248-1004

November 11, 2021

<u>Via email to</u>:
stevenweitz@weitzschwartz.com
mhosford@weitzschwartz.com
eschwartz@weitzschwartz.com

Steven C. Weitz, Esq.
Weitz & Schwartz P.A.
900 S.E. 3rd Ave., Suite 204
Fort Lauderdale, FL 33316

|   |   |   |
|---|---|---|
| RE: | <u>Demand for Estoppel Letter under Fla. Statutes, §701.04</u> | |
| | Property: | 274 Atlantic Avenue, Sunny Isles Beach, FL 33160 |
| | Mortgagor: | 274 Atlantic Isles LLC |
| | Mortgagee: | Eric R. Schwartz, as Trustee UTA dated March 4, 2019 |
| | Mortgage: | Dated 3/7/2019 in original principal sum of $1,500,000, recorded in ORB 31360, Page 4924, as amended by instrument recorded in ORB 32110, Page 3390, as further amended by instrument recorded in ORB 32128, Page 4624, increasing principal sum to $2,000,001, and any further amendments, if any, of the Public Records of Miami-Dade County, Florida (collectively, the "Mortgage") |

Dear Mr. Weitz:

I represent the mortgagor, 274 Atlantic Isles LLC.  This correspondence shall constitute a request under Fla. Statutes, §701.04, for an estoppel letter setting forth the unpaid balance of the loan secured by the above-referenced Mortgage held by your client, Eric R. Schwartz, as Trustee UTA dated March 4, 2019.

The estoppel letter can be sent to me by email to docservice@epslaw.com or at my office address, 1820 NE 163rd Street, Suite 100, North Miami Beach, Florida 33162.

Thank you,

/s/ *Eric P. Stein*
ERIC P. STEIN, ESQ.
EPS/me

EXHIBIT L

Eric R. Schwartz, as Trustee UTA dated March 4, 2019
900 S.E. 3rd Ave., Suite 204
Fort Lauderdale, FL 33316

November 26, 2021

VIA EMAIL ONLY TO:  docservice@epslaw.com

Eric P. Stein, Esq.
Eric P. Stein, P.A.
1820 N.E. 163rd Street, Suite 100
North Miami Beach, FL 33162

RE:         Mortgagor:     274 Atlantic Isles LLC
            Mortgagee:     Eric R. Schwartz, as Trustee UTA dated March 4, 2019
            Property:      274 Atlantic Avenue
                           Sunny Isles Beach, FL 33160

Dear Mr. Stein:

      This letter is pursuant to your Client, 274 Atlantic Isles LLC's request for an estoppel letter in connection with the mortgage recorded in Official Records Book 31360, at Page 4924 of the Public Records of Miami-Dade County, Florida, as amended by the instrument recorded in Official Records Book 32110, at Page 3390, and as further amended by the instrument recorded in Official Records Book 32128, at Page 4624 all of the Public Records of Miami-Dade County, Florida (the "Mortgage").

      Pursuant to the Deed in Lieu of Foreclosure recorded in Official Records Book 32430, at Page 4114 of the Public Records of Miami-Dade County, Florida, there is no outstanding indebtedness related to that Mortgage. Upon resolution in favor of the Undersigned of the pending action of Eric R. Schwartz, as Trustee v. Isaac Halwani, et, al., in the Circuit Court in and for Miami-Dade County, Florida, Case No. 2021-012322-CA-01, a satisfaction of the Mortgage will be recorded in the Public Records.

                    Very Truly Yours,

                    /s/ Eric. R. Schwartz

                    Eric R. Schwartz, as Trustee UTA dated March 4, 2019

EXHIBIT M