*Tagged opinion*



**ORDERED in the Southern District of Florida on March 9, 2023.**

**Laurel M. Isicoff**
**Chief United States Bankruptcy Judge**

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DIVISION OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                                        Case No. 22-14810-LMI
274 ATLANTIC ISLES, LLC,                    Chapter 11
     Debtor.
_____/

ERIC R. SCHWARTZ, as Trustee UTA          Adv. Pro. No.: 22-01199-LMI
dated 3/4/2019,
     Plaintiff,
v.

ISAAC HALWANI; GISELLE HALWANI;
274 ATLANTIC ISLES, LLC, a Delaware
limited liability company; et al.,
     Defendants.
_____/

**ORDER GRANTING PLAINTIFF/COUNTER-DEFENDANT'S**

## <u>MOTION FOR SUMMARY JUDGMENT</u>

This matter came before the Court for hearing on November 30, 2022 (the "Hearing") on the *Motion for Summary Judgment* (ECF #24) (the "Motion") filed by Plaintiff/Counter-Defendant, Brian M. Gaines, as Trustee UTA dated 3/4/2019[1] (the "Lender") and Third-Party Defendants,[2] Brain M. Gaines ("Gaines") and LBM Enterprises, LLC ("LBM"). The Court has considered the Motion, the *Response to Motion for Summary Judgment* (ECF #29) (the "Response") filed by Defendants/Counter-Plaintiffs, Isaac Halwani ("Mr. Halwani"), Giselle Halwani ("Mrs. Halwani" and, collectively, the "Halwanis") and 274 Atlantic Isles, LLC ("274 LLC" or the "Debtor") (collectively, the Halwanis and 274 LLC are referred to as the "Defendants"), the *Reply in Support of Motion for Summary Judgment* (ECF #32) (the "Reply") filed by Lender, Gaines, and LBM, and the exhibits and filings submitted by the parties in support of, and in opposition to, the Motion,[3] and has heard the arguments of counsel at the Hearing.

---

[1] The original trustee under the subject trust was Eric R. Schwartz, who was replaced by Brian M. Gaines on March 15, 2022. *See* Counterclaim ¶5; admitted in Answer ECF #22, ¶5.

[2] The Motion incorrectly identifies Gaines and LBM as "Counterclaim Defendants" instead of "Third-Party Defendants".

[3] Lender, Gaines, and LBM filed a *Statement of Undisputed Material Facts* (ECF #23) ("Lender's SOF") in support of the Motion. Defendants filed a *Declaration of Isaac Halwani* (ECF #30) (the "Isaac Declaration"), *Composite Exhibit "A" to the Response* (ECF #29-1) (collectively, the "Estoppel Certificates" and, singularly, an "Estoppel Certificate"), *Exhibit "B" to the Response* (ECF #29-2) (the "Realtor Declaration"), and a *Statement of Undisputed Material Facts* (ECF #31) ("Defendants' SOF"). Lender, Gaines and LBM also filed a *Reply to Defendant 274 Atlantic Isles, LLSC's [sic] Statement of Undisputed Material Facts* (ECF #33) ("Reply to Defendants' SOF").

The Motion seeks summary judgment on Counts I, II, III, IV, V, VI, and IX of the Second Amended Counterclaim (the "Counterclaim") (ECF #6 at Exhibit "A").[4] For the reasons stated below, the Lender's Motion is GRANTED.

## FACTS AND PROCEDURAL HISTORY

This case revolves around a dispute as to the ownership of the real property located at 274 Atlantic Avenue, Sunny Isles Beach, Florida (the "Property"). On May 25, 2021, the Lender filed the State Court Action (defined below) to eject the Defendants from the Property. During the pendency of the State Court Action, on June 22, 2022, 274 LLC filed a petition for bankruptcy in this Court in Case No. 22-14810-LMI. On June 29, 2022, 274 LLC removed the State Court Action to this Court. (ECF #1). On July 12, 2022, Defendants filed a *Motion for Leave to Amend Counterclaim and Third-Party Complaint*, with the Counterclaim attached as Exhibit A thereto (ECF #6). On September 7, 2022, Lender, Gaines, and LBM filed their *Answer and Affirmative Defenses* to the Counterclaim (ECF #22) (the "Answer"). The Counterclaim seeks: (1) in Count I, a declaratory judgment against Lender determining that the Deed-in-Lieu (defined below) conveying title of the Property to Lender is deemed a mortgage under Fla. Stat. §697.01; (2) in Count II, to quiet title to the Property in favor of 274 LLC; (3) in Count V, a declaratory judgment against Lender determining that

---

[4] On December 19, 2022, Defendants filed an *Agreed Ex-Parte Motion for Leave to File Third Amended Counterclaim and Third-Party Complaint* (ECF #48) which omits, *inter alia*, Counts III and IV from the Counterclaim, and Defendants have informed the Court that they have abandoned Count IX; accordingly, the Court has not considered the Motion as to those three counts. This order addresses the remaining Counts I, II, V, and VI. Each of the remaining counts is solely against Lender, and not against Gaines or LBM. *See Defendants Isaac Halwani, Giselle Halwani, and 274 Atlantic Isles, LLC's Third Amended Counterclaim and Third-Party Complaint* (ECF #54).

the Estoppel Certificate as to the first mortgage is insufficient under Fla. Stat. §701.04; and (4) in Count VI, avoidance and recovery of the Property as a constructively fraudulent transfer under 11 U.S.C. §§548(a)(1)(B) and 550(a).

Based upon the Counterclaim, the Answer, Lender's SOF, and Defendants' SOF, and Reply to Defendants' SOF, the following facts are undisputed, except as otherwise noted:

A.      The Halwanis are the sole members of 274 LLC.

B.      274 LLC acquired title to the Property on or about January 22, 2016 by virtue of a warranty deed that was recorded on January 25, 2016 in Official Records Book 29935, Page 1668, of the Public Records of Miami-Dade County, Florida.

C.      On March 7, 2019, 274 LLC encumbered the Property with a first mortgage in favor of Lender in the original amount of $1,500,000.00, which mortgage was recorded on March 12, 2019 in Official Records Book 31360, Page 4924, of the Public Records of Miami-Dade County, Florida (the "First Mortgage").

D.      TCB & GSD Consulting LLC, a Florida limited liability company ("TCB"), executed a promissory note dated March 7, 2019 in the original amount of $1,500,000.00 (the "First Note").  Repayment of the First Note was secured by the First Mortgage. 274 LLC and the Halwanis executed guaranties of the First Note agreeing to be jointly and severally liable for all amounts coming due under the First Note.

E.     On October 11, 2019, 274 LLC further encumbered the Property with a second mortgage in the original amount of $525,000.00, which mortgage was recorded on October 24, 2019 in Official Records Book 31661, Page 2766, of the Public Records of Miami-Dade County, Florida (the "Second Mortgage").

F.     Eric R. Schwartz, as Trustee UTA dated October 10, 2019 ("Second Lender") is the named lender under the Second Mortgage; however, Gaines replaced Schwartz as the trustee of the Second Lender.

G.     Frozen Wheels, LLC, a Florida limited liability company ("Frozen Wheels") executed a promissory note dated October 11, 2019 in the original amount of $525,000.00 (the "Second Note").  Repayment of the Second Note is secured by the Second Mortgage. 274 LLC and the Halwanis executed guaranties of the Second Note, agreeing to be jointly and severally liable for all amounts coming due under the Second Note.

H.     The First Note was modified by that certain instrument entitled *Modified and Consolidated Promissory Note* dated September 29, 2020 which included a loan advance of $500,001.00, thereby increasing the principal balance of the First Note from $1,500,000.00 to $2,000,001.00 (the "Modified First Note"). The First Mortgage was modified by instrument entitled *Future Advance Receipt and Modification of Promissory Note and Mortgage and Security Agreement* dated September 29, 2020 that was recorded on October 6, 2020 in Official Records Book 32128, Page 4624, of the Public Records of Miami-Dade County, Florida (the "Modified First Mortgage"). 274 LLC and the Halwanis executed guaranties of the Modified First Note and the Modified First Mortgage.

5

I. To correct a scrivener's error in the Modified First Note which called for payments to be made on the 29th of the month rather than the 7th, on October 12, 2020, TCB executed a *Corrected Modified and Consolidated Promissory Note* (the "Corrected Modified First Note") reflecting the corrected payment date.

J. TCB, 274 LLC, and the Halwanis executed an instrument entitled *Forbearance Agreement* (the "Forbearance Agreement") bearing an effective date of December 18, 2020, after the Lender alleged that TCB as Borrower, and 274 LLC and the Halwanis as Guarantors, were in default with respect to their obligations under the Modified First Note. According to the Forbearance Agreement recitals, the Lender intended to file a foreclosure action.

K. Pursuant to the Forbearance Agreement, on December 29, 2020 Mr. Halwani, on behalf of 274 LLC, executed a deed-in-lieu of foreclosure (the "Deed-in-Lieu") for the Property which named Lender as the grantee. The Deed-in-Lieu was to be held in escrow by Lender's attorneys, Weitz & Schwartz, P.A. ("Lender's Counsel"), and would be voided by said law firm and returned to 274 LLC in the event that the monetary obligations stipulated under the Forbearance Agreement were timely brought current.

L. All of the monetary obligations in the Forbearance Agreement were already payment obligations required to be made under the underlying loan documents.

M. After Lender declared a default under the Forbearance Agreement, the Deed-in-Lieu was recorded by Lender's Counsel on April 5, 2021 in Official

Records Book 32430, Page 4114, of the Public Records of Miami-Dade County, Florida.

N.      The Forbearance Agreement and the Deed-in-Lieu pertain solely to the First Note and First Mortgage, as amended by the Modified First Note, the Corrected Modified First Note, and the Modified First Mortgage. The Forbearance Agreement and the Deed-in-Lieu do not reference nor pertain to the Second Note or the Second Mortgage.

O.      At the time the Deed-in-Lieu was recorded, the principal amount of the debt owed under the Second Note and the Second Mortgage was $721,198.43.

P.      On May 25, 2021, Lender filed a one count complaint for ejectment against 274 LLC and the Halwanis pursuant to Case No. 2021-012322-CA-01 in the Circuit Court of Miami-Dade County, Florida (the "State Court Action").

Q.      On November 11, 2021, counsel for 274 LLC made a statutory demand under Fla. Stat. §701.04 to Lender for an estoppel letter relative to the First Mortgage, as modified by the Modified First Mortgage. On November 26, 2021, Lender provided the Estoppel Certificate as to the First Mortgage confirming that pursuant to the Deed-in-Lieu there is no outstanding indebtedness related to the First Mortgage and that, upon resolution of the State Court Action in favor of Lender, a satisfaction of the First Mortgage will be recorded in the public records.

R.      On November 11, 2021, counsel for 274 LLC made a statutory demand under Fla. Stat. §701.04 to Second Lender for an estoppel letter relative

to the Second Mortgage. On November 26, 2021, Second Lender provided a separate Estoppel Certificate as to the Second Mortgage confirming a payoff in the amount of $676,371.25, including principal, past due interest, legal fees, and per diem interest, and Second Lender further provided wire instructions for the payment of said amounts due under the Second Mortgage.

S.      All of the loan documents executed in favor of Lender and Second Lender, as described above, as well as the Forbearance Agreement and the Deed-in-Lieu, were prepared by Lender's Counsel. Neither 274 LLC nor the Halwanis were represented by legal counsel in connection with the Forbearance Agreement or the Deed-in-Lieu.

T.      The Realtor Declaration[5] states that the value of the Property in December 2020—the date on or about which the Deed-in-Lieu was executed—was between $5,750,000.00 and $6,000,000.00. The Realtor Declaration also states that the value of the Property on November 10, 2021—the date on which the Realtor Declaration was signed—was between $6,550,000.00 and $6,700,000.00. The Realtor Declaration is unrebutted.

U.      In his Declaration, Mr. Halwani stated that, at the time the Deed-in-Lieu was executed (on December 29, 2020) and recorded (on April 5, 2021), Frozen Wheels did not have sufficient assets and was unable to pay the sums due under the Second Mortgage. *See* Isaac Declaration, ¶10.   The Lender disputes this.

---

[5] *See supra* note 3.

V.     Lender and Gaines admit that 274 LLC owes the full amount (i.e.-$525,000.00 in principal plus default interest and legal fees) under the Second Mortgage. *See* Answer, ¶46.

W.     Other than owning the Property, 274 LLC has no other operations.

X.     In connection with the Second Note, 274 LLC executed and delivered to Second Lender a Continuing Guaranty (ECF #23-21) (the "Second Note Guaranty") obligating 274 LLC to the amounts due under the Second Note. The Second Note Guaranty includes the following terms in ¶3 and ¶4:

> 3.     In the event Borrower [Frozen Wheels] fails to perform its covenants, agreements and undertakings as provided in any Loan Document or otherwise defaults under any of the Loan Documents, Lender shall first foreclose the Mortgage in the manner provided by applicable law and shall first proceed against the Borrower and exhaust any security held by Borrower and all remedies available to Lender against Borrower prior to proceeding against Guarantor [274 LLC]. Lender shall apply all foreclosure proceeds to the debt secured by the Loan Documents prior to seeking recovery against the Guarantor.

> 4.     The obligations of the undersigned [274 LLC] hereunder are independent of the obligations of Borrower, and a separate action or actions for payment, damages or performance may be brought and prosecuted against the undersigned, or any one of them, whether or not an action is brought against Borrower or the security for Borrower's obligations, and whether or not Borrower be joined in any such action or actions, and whether or not notice be given or demand be made upon Borrower.

Y.     No satisfaction of the Second Mortgage or release/cancellation of the Second Note has been issued by Second Lender.

Z.     From a point in time prior to the First Mortgage, the Halwanis and their minor children occupy the Property as their primary residence.

## ANALYSIS

"Summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rules 7056 and 9014 of the Federal Rules of Bankruptcy Procedure is appropriate when there exists no genuine issue of material fact and a decision may be rendered as a matter of law." *In re Ortega T.*, 573 B.R. 284, 290-91 (Bankr. S.D. Fla. 2017). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir. 1997). In considering a motion for summary judgment, the Court must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Id.* The party moving for summary judgment has the burden of demonstrating that no genuine issue as to any material fact exists and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the moving party meets that burden, the burden shifts to the non-movant, who must present specific facts showing that there exists a genuine dispute of material fact. *Walker v. Darby*, 911 F.2d 1573, 1576 (11th Cir. 1990). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Id.* at 1577 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986)). At the summary judgment stage, the Court will not weigh the evidence or find facts; rather, the Court determines only whether there is sufficient evidence upon which a reasonable juror could find for the nonmoving party. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir.

2003). If there are no material facts in dispute, and only a purely legal question remains to be decided by the Court, then granting summary judgment is appropriate. *Anderson,* 477 U.S. at 247–48.

Both parties agree that there are no genuine issues of material fact and that the Court need only decide questions of law.  For the reasons set forth herein, Lender is entitled to summary judgment on Counts I, II, V, and VI.

## I.  __The Lender Is Entitled to Summary Judgment on Counts I, II, and V.__

As noted above, in Counts I, II, and V, respectively, 274 LLC seeks a declaratory judgment that the Deed-in-Lieu is a mortgage rather than a valid transfer of title to the Property from 274 LLC to the Lender, petitions to quiet title to the Property on that basis, and seeks a separate declaratory judgment that the Estoppel Certificate provided by the Lender on November 26, 2021 was deficient. The Lender has moved for summary judgment on Counts I, II, and V on the basis that (i) the Deed-in-Lieu is not a mortgage as a matter of law because it served to extinguish the underlying debt not secure new debt; (ii) the Deed-in-Lieu, given as part of a forbearance agreement, did not clog 274 LLC's equity of redemption, and is therefore not void[6]; and (iii) because the Deed-in-Lieu is not

---

[6] The right of redemption allows a "a mortgagor to reclaim its estate through payment of the amount of the judgment after it has been forfeited through foreclosure." 37 Fla. Jur 2d Mortgages, Etc. §353. "Under the doctrine against clogging the equity of redemption, a mortgagor cannot bind himself or herself not to assert the right of redemption by means of an agreement made contemporaneously with or as part of the mortgage transaction. If the conveyance is a mortgage, the right of redemption is an inseparable incident that cannot be restrained or clogged by an agreement." 37 Fla. Jur 2d Mortgages, Etc. §357.

a mortgage the Estoppel Certificate satisfies the requirements of Fla. Stat. §701.04.[7]

274 LLC presents four arguments in opposition to summary judgment on Counts I, II, and V: that the Deed-in-Lieu was given to secure payment of money and is therefore a mortgage; that the indebtedness secured by the mortgage given to the Lender was not extinguished when the Deed-in-Lieu was recorded; that the Deed-in-Lieu in fact served to clog 274 LLC's equity of redemption; and that allowing the Deed-in-Lieu to stand would result in an inequitable windfall to the Lender. None of these arguments can defeat the Lender's entitlement to summary judgment.

Fla. Stat. §697.01 provides that "[a]ll … instruments of writing conveying or selling property, either real or personal, for the purpose or with the intention of securing the payment of money … shall be deemed and held mortgages, and shall be subject to the same rules of foreclosure and to the same regulations, restraints and forms as are prescribed in relation to mortgages."  If "the real purpose of the parties to an absolute conveyance of property was to secure the payment of money then due, and not the actual extinguishment of the debt, the conveyance will be regarded as a mortgage." *Stovall v. Stokes*, 94 Fla. 717, 740, 115 So. 828, 837 (1927).

---

[7] Fla. Stat. §701.04(1) provides: "Within 14 days after receipt of the written request of a mortgagor, a record title owner of the property, a fiduciary or trustee lawfully acting on behalf of a record title owner, or any other person lawfully authorized to act on behalf of a mortgagor or record title owner of the property, the holder of a mortgage shall deliver or cause the servicer of the mortgage to deliver to the person making the request at a place designated in the written request an estoppel letter setting forth the unpaid balance of the loan secured by the mortgage."

274 LLC argues that the Deed-in-Lieu was executed for the purpose of securing repayment of the TCB loan and is therefore a mortgage. However, the undisputed record evidence shows that the Deed-in-Lieu was executed to secure performance of the Forbearance Agreement. At the time the Forbearance Agreement was executed, there was a default on the loan to TCB secured by the First Mortgage. The Deed-in-Lieu did not serve to secure repayment of the TCB loan as the First Mortgage was already in place serving as security for the repayment. Rather, the Deed-in-Lieu was delivered, in escrow, to secure performance of the obligations reflected in the Forbearance Agreement. The parties agreed that the Lender would hold the Deed-in-Lieu in escrow pending cure of the default of the mortgage loan pursuant to the terms of the Forbearance Agreement. Upon the failure of any of TCB, 274 LLC, or the Halwanis to cure the default , the Lender had the right to record the Deed-in-Lieu. Thus, the Deed-in-Lieu is not in the nature of a mortgage.

274 LLC next argues that because the Lender has not issued a satisfaction of mortgage, the debt secured by the First Mortgage was never truly extinguished. However, the undisputed facts show that the debt secured by the First Mortgage has been extinguished, as evidenced by the Estoppel Certificate given by the Lender to 274 LLC on November 26, 2021, which confirmed that the debt secured by the First Mortgage was extinguished even though the First Mortgage remains in place.  As the Lender pointed out at the Hearing, the Forbearance Agreement gives the Lender the right, upon the failure to cure the

13

defaults, to eject the Halwanis from the Property and foreclose out any intervening liens.[8]

Delivery of the Deed-in-Lieu did not clog 274 LLC's equity of redemption. There is no absolute rule regarding whether and when a deed-in-lieu, delivered in escrow, impermissibly violates, that is, clogs, a mortgagor's equity of redemption. Consequently, "[a]greements [to escrow deeds-in-lieu] could easily result in abuse or inequity ... [and therefore] should be carefully scrutinized to assure that they do not violate the favored right of redemption." *Ringling Joint Venture II v. Huntington Nat'l Bank*, 595 So. 2d 180, 183 (Fla. 2d DCA 1992).

"Under [the doctrine of the equity of redemption], '[a] mortgagor cannot, **by any agreement made contemporaneously with or as a part of the mortgage transaction**, bind himself not to assert his right or equity of redemption.... If the conveyance is a mortgage, the right of redemption is an inseparable incident, which cannot be restrained or clogged by agreement.'" *Ringling Joint Venture II*, 595 So. 2d at 182 (internal citations omitted) (emphasis added). However, "[t]he doctrine against clogging the right of redemption does not create an absolute right. The courts have recognized that this doctrine of equity does not apply if the right is relinquished by '**a subsequent agreement upon a further consideration**.'" *Id.* (internal citations omitted) (emphasis added).

---

[8] It is not uncommon for a foreclosing lender, regardless of a deed-in-lieu, to leave the mortgage in place to foreclose the interests of any subordinate lienholders and interest holders. Otherwise, the lender would take title subject to those subordinate liens and interests.

When 274 LLC signed the First Mortgage it retained its equity of redemption. However, 274 LLC bargained away its redemption rights in consideration of the additional time 274 LLC received under the Forbearance Agreement to cure the loan default; that additional consideration is sufficient to forgo the redemption right. Because there was new consideration given for delivery of the Deed-in-Lieu, 274 LLC validly surrendered its redemption rights and cannot defeat delivery of the Deed-in-Lieu based on a clogging theory. *See Ringling Joint Venture II*, 595 So. 2d at 182; *Stovall*, 115 So. at 837 ("[The right of redemption] can be defeated only by a subsequent agreement upon a further consideration.").

Finally, 274 LLC argues that the Deed-in-Lieu should be recharacterized as a mortgage because it would result in a windfall. 274 LLC points to *Stovall v. Stokes,* in which case the Florida Supreme Court wrote "[i]nadequacy of consideration, where shown, is an element which is always given weight by courts of equity in determining whether a transaction involving the transfer of valuable property by one to another is unconscientious or constructively fraudulent, or perhaps as tending to prove actual fraud. Indeed, it has always been looked upon by such courts as sufficient to create a strong suspicion that the transaction has not been characterized by good faith in the party securing benefits thereby and to cast upon him the burden of making it perfectly clear that it was in all respects honest and fair and just to the grantor." *Stovall,* 115 So. at 838. *Stovall* is easily distinguishable. In *Stovall,* the Florida Supreme Court affirmed a lower court ruling that a deed from a mother (the grantor) to

15

her son (the grantee) was a mortgage, rather than an absolute conveyance of title. The lower court found, and the Supreme Court agreed, that "[t]he evidence shows conclusively that Mrs. Stokes never at any time considered this transaction, whatever it may have been, as passing the absolute title to the property to Clifford G. Stokes. The undisputed evidence is that Clifford G. Stokes told one of the witnesses to the deed at the time she subscribed to same as a witness that the same was made to secure him in advances which he had made and was to make." 115 So. at 836.

In this case there was no special relationship between 274 LLC and the Lender; 274 LLC did not deliver the Deed-in-Lieu as further security for any loan; and, as already addressed, 274 LLC received valuable consideration for delivery of the Deed-in-Lieu. But, 274 LLC argues, the consideration wasn't *enough.* As *Stovall* observes, inadequacy of consideration *might* be considered by a court in determining whether a transfer can be avoidable as a fraudulent transfer.[9] Admittedly the *Stovall* court also notes that a court may consider adequacy of consideration in determining if a transfer is unconscientious. However, the *Stovall* court's use of the word "unconscientious" reflects the nature of the transactions such as that described in the *Stovall* case, which lay in fraud, and the close (mother and son) relationship between the mortgagor and the mortgagee. As a general rule though, a court cannot rewrite a contract based on what is essentially an after-the-fact change of heart; thus the Court cannot rewrite the Forbearance Agreement to achieve what 274 LLC believes to be a

---

[9] The Court will address the fraudulent transfer issue later in this opinion.

16

more equitable result. *See Gold, Vann & White, P.A. v. Friedenstab*, 831 So. 2d 692, 696 (Fla. 4th DCA 2002) ("It is not the province of a court to relieve one party of its contractual obligation on the basis of a judicial determination as to the sufficiency of recited consideration given for an obligation.").

Based on all the foregoing, the Court finds that the Deed-in-Lieu is not a mortgage, is not void, and because the Deed-in-Lieu is not a mortgage, the Estoppel Certificate indicating there was no outstanding indebtedness due with respect to the First Mortgage satisfies the requirements of Fla. Stat. §701.04 (if applicable at all). Therefore, Lender is entitled to summary judgment on Counts I, II, and V of the Counterclaim.

## II.   <u>The Lender is Entitled to Summary Judgment on Count VI.</u>

In Count VI of the Counterclaim, 274 LLC seeks avoidance and recovery of a fraudulent transfer under 11 U.S.C. §§548(a)(1)(B) and 550(a).[10] 274 LLC argues that (a) it received less than reasonably equivalent value for the *execution and delivery into escrow* of the Deed-in-Lieu to Lender's counsel; and (b) at the time the Deed-in-Lieu was *executed and delivered* 274 LLC (i) was insolvent or became insolvent as a result; (ii) was engaged or was about to be engaged in a business or transaction for which its remaining property was unreasonably small

---

[10] Pursuant to section 548(a)(1)(B), "the trustee may avoid any *transfer* . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor. . . if the debtor received less than a reasonably equivalent value in exchange for such transfer . . . and [the debtor] was [either] insolvent on the date that such transfer was made . . . or [the debtor] was left with unreasonably small capital." 11 U.S.C. §548(a)(1)(B) (emphasis added). Pursuant to section 550(a), where a transfer is avoided under section 548 the bankruptcy trustee may recover the property transferred for the benefit of the bankruptcy estate. 11 U.S.C. §550(a).

capital; or (iii) intended to incur, or believed that it would incur, debts beyond its ability to pay such as debts matured.

Under 11 U.S.C. §548(d)(1), "[a] transfer is made when such transfer is so perfected that a bona fide purchaser from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest in the property transferred that is superior in such property of the transferee." "[F]or purposes of determining the time of an alleged fraudulent transfer, the time of perfection of such transfer requires reference to state law." *In re Shannis*, 229 B.R. 234, 237 (Bankr. M.D. Fla. 1999). Under Florida law, the *recording* of a deed is essential in order to perfect a transfer of real property against creditors and subsequent bona fide purchasers.[11] Therefore, for the purposes of a fraudulent transfer analysis under Florida law and section 548(a)(1), the transfer of real property occurs upon the recording of a deed. *Id.*

Count VI of the Counterclaim seeks to set aside the *execution* of the Deed-in-Lieu, not the *recording* of the Deed-in-Lieu.[12] But as of December 29, 2020, the date the Deed-in-Lieu was executed and delivered into escrow, no transfer of the Debtor's property occurred. There was no transfer of the Property until the Deed-in-Lieu was delivered out of escrow to the Lender and recorded. Until that time, the Property remained the property of 274 LLC. *See Shannis*, 229 B.R. at

---

[11] Fla. Stat. §695.01(1) ("No conveyance, transfer, or mortgage of real property, or of any interest therein, nor any lease for a term of 1 year or longer, shall be good and effectual in law or equity against creditors or subsequent purchasers for a valuable consideration and without notice, unless the same be recorded according to law.").

[12] In the competing orders submitted by the parties to the Court, the parties appear to focus on the *recording* of the Deed-in-Lieu, however, that is not the relief sought in the Counterclaim. Whether the *recording* of the Deed-in-Lieu was a fraudulent transfer is not at issue, and this opinion does not address whether the recording could be set aside.

237; *In re Levy*, 185 B.R. 378, 382 (Bankr. S.D. Fla. 1995); *Accord In re Greene*, 2007 WL 1309047 (Bankr. E.D. Va. 2007) (finding under Virginia state law[13] that the date a deed in lieu was recorded is the transfer date for the purposes of a section 548(a)(1) analysis).

The date the Deed-in-Lieu -in-Lieu was *recorded*, April 5, 2021, is the date when the transfer of the Debtor's property occurred for purposes of section 548 because that is when the transfer was perfected under Florida law. Because no transfer occurred at the date of execution of the Deed-in-Lieu, the Lender is entitled to summary judgment on Count VI.

Because there was no transfer, the Court does not need to address the other elements of section 548, but the Court will do so as summary judgment in favor of the Lender is also appropriate as there is no genuine issue of material fact with respect to the elements of insolvency or reasonably equivalent value.

A debtor is insolvent if the sum of its debts exceeds its assets at a fair valuation. "To determine whether a debtor is insolvent, the Court must compare the debtor's debt obligations with the debtor's assets, at fair value, as of the relevant date. This is often described as the balance sheet test." *Mukamal v. Nat'l Christian Charitable Found., Inc. (In re Palm Beach Fin. Partners, L.P.)*, 598 B.R. 885, 889-90 (Bankr. S.D. Fla. 2019). "In calculating the debtor's balance sheet, the court should consider only those assets 'readily susceptible to liquidation and the payment of debts.'" *Advanced Telecomm. Network, Inc. v. Allen (In re Advanced Telecomm. Network, Inc.)*, 490 F.3d 1325, 1334 (11th Cir. 2007).

---

[13] The law in Florida is like that in Virginia. *See* Fla. Stat. §695.01(1).

Because the "transfer" the Counterclaim seeks to set aside is the execution of the Deed-in-Lieu, the "relevant date" for purposes of determining insolvency is December 29, 2020.  The Court must therefore determine whether on that date, 274 LLC's liabilities exceeded its assets. 274 LLC only had one asset, the Property, which was not "transferred" on December 29, 2020. The Debtor also had only two liabilities—its respective guarantees of the TCB loan in favor of the Lender and the Frozen Wheels loan in favor of the Second Trust. Both of these liabilities were contingent.  *See In re Russo*, 494 B.R. 562, 566 (Bankr. M.D. Fla. 2013) ("Courts have recognized that a personal guaranty is the classic example of a contingent liability because the guarantor's liability is triggered only if the principal obligor has failed to satisfy its debt."). "It is well established . . . that a contingent liability cannot be valued at its potential face amount; rather, 'it is necessary to discount it by the probability that the contingency will occur, and the liability become real.'" *In re Chase & Sanborn Corp.*, 904 F.2d 588, 594 (11th Cir. 1990) (quoting *Matter of Xonics Photochemical, Inc.*, 841 F.2d 198, 200 (7th Cir. 1988)). If "the chances of it occurring are equal to zero (that is, the liability is costless, or the chances of it happening are negligible)," then the contingent liability should be valued at zero. *Advanced Telecomm. Network, Inc.*, 490 F.3d at 1335.

The parties disagree as to the value that should be given to the contingent liability represented by the Second Note Guaranty.[14] However, the Lender does not dispute 274 LLC's assertion that the Property was valued between $5,750,000.00 and $6,000,000.00 at the time of the execution and delivery into escrow of the Deed-in-Lieu. It is undisputed that as of the time the Deed-in-Lieu was recorded, the amount of the debt owed under the First Note and secured by the First Mortgage was $2,000,001.00 and the amount owed under the Second Note and secured by the Second Mortgage was $721,198.43. Presumably the amounts owed were less when the Deed-in-Lieu was delivered into escrow. Since in December of 2020 the liabilities of 274 LLC, whether contingent or otherwise, were less than the value of the Property, 274 LLC was not insolvent as of the date of the execution and delivery into escrow of the Deed-in-Lieu.[15]

274 LLC also argues that it received less than reasonably equivalent value for executing the Deed-in-Lieu and placing it into escrow in accordance with the Forbearance Agreement. As this opinion has already found, the Forbearance Agreement was adequate consideration to support the *execution* of the Deed-in-Lieu and its placement into escrow. *See* discussion *supra* Section I. Accordingly,

---

[14] The outcome of this disagreement is dependent on the interpretation of paragraphs 3 and 4 of the Second Note Guaranty, which conflict with each other. The parties discuss at length their respective positions in the competing orders submitted to the Court, but the Court finds that the interpretation of these paragraphs is not relevant to this opinion because the parties do not dispute that the value of the Property at the time of the execution and delivery into escrow of the Deed-in-Lieu is well above the total of 274 LLC's combined debt at that time.

[15] 274 LLC also argues that, even if it was not insolvent, after the Deed-in-Lieu was recorded, it had unreasonably small capital to engage in a business or transaction. The fatal flaw with this argument is that 274 LLC had no business and was not engaged in any transactions. 274 LLC did nothing more than own the Property.

274 LLC received reasonably equivalent value for the execution of the Deed-in-Lieu.[16]

For all of these reasons, summary judgment on Count VI of the Counterclaim in favor of the Lender is granted.

## CONCLUSION

Lender sought summary judgment on Counts I, II, V, and VI of the Counterclaim. The Court finds that Lender is entitled to summary judgment on Counts I, II, V, and VI of the Counterclaim as a matter of law. Accordingly, it is ORDERED as follows:

1. Lender's Motion is GRANTED.

2. Summary judgment on Count I is GRANTED in favor of Lender.

3. Summary judgment on Count II is GRANTED in favor of Lender.

4. Summary judgment on Count V is GRANTED in favor of Lender.

5. Summary judgment on Count VI is GRANTED in favor of Lender.

6. Lender is directed to submit a final judgment consistent with this order.

7. The Court will set a status conference by separate notice of hearing to determine what steps should be taken next in light of this ruling.

###

Copies to:

Glenn D. Moses, Esq.

---

[16] The Court makes no finding as to whether the *recording* of the Deed-in-Lieu would have been a fraudulent transfer, since that relief was not sought in the Complaint. The Court notes however, that the Lender conceded at oral argument that there are issues of material fact as to whether the Debtor received reasonably equivalent value at the time the Deed-in-Lieu was recorded.

Eric D. Jacobs, Esq.
Meaghan E. Murphy, Esq.
Benjamin H. Brodsky, Esq.

*Attorney Murphy is directed to serve a copy of this Order on interested parties who do not receive service by CM / ECF, and file a proof of such service within two (2) business days from entry of the Order.*